THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ALEXANDER IVAN, DEFENDANT-APPELLANT.

Argued May 9, 1960—Decided June 28, 1960.

*Mr. Daniel M. Sheehan* argued the cause for appellant (*Messrs. Pincus, Shamy & Sheehan,* attorneys; *Mr. Daniel M. Sheehan,* of counsel).

*Mr. Arthur S. Meredith,* Somerset County Prosecutor, argued the cause for respondent (*Mr. Michael R. Imbriani,* Assistant Prosecutor, of counsel).

The opinion of the court was delivered by

WEINTRAUB, C. J.   Following a plea of *non vult* to an indictment for bookmaking in violation of *N. J. S.* 2*A* :112–3, defendant was sentenced to a term of one to two years and fined $5,000.   We certified his appeal on our motion before the Appellate Division considered it.

Defendants asserts the sentence is illegal.   It admittedly is within the limits fixed by the Legislature in the cited

statute (a fine of not less than $1,000 nor more than $5,000, or imprisonment in the State prison for not less than one year nor more than five years, or both). Defendant however charges the trial judge had a preconceived policy that offenses of that kind merit the sentence imposed without regard to the circumstances of the individual offender. Defendant stresses that he had no prior conviction, is a good family man, and has a record of regular employment in industry.

The transcript does not support a claim that the mentioned circumstances were ignored. The trial judge had before him the presentence report required by *R. R.* 3:7–10(*b*). As we read the record, the trial judge expressed the view that the challenge of organized gambling cannot be met without effective deterrence; that a sentence such as the one imposed is necessary to protect the public interest; that none of the facts in the presentence report or presented by counsel were sufficient to justify a different course; that, on the contrary, the report showed that defendant would not reveal the identity of his superior in the gambling operation, giving the stock explanation that he knows only the first name of that individual, an answer the trial court understandably declined to credit. Upon these total circumstances the trial judge sentenced as he did. He made it plain that he would take another course if the defendant, instead of protecting others and thus assisting them to continue their illegal venture, had evidenced a willingness to side with law and order.

The philosophical justification for "punishment" has divided men for centuries. Suggested bases or aims are (1) retribution, (2) deterrence of others, (3) rehabilitation of the defendant, and (4) protection of the public by isolation of the offender. Redmount, *"Some Basic Considerations Regarding Penal Policy,"* 49 *Journal of Criminal Law, Criminology and Police Science* 426 (1959). Today retribution is not a favored thesis, although some still claim a need to satisfy a public demand for vengeance. Perhaps it persists

as an unarticulated premise in individual sentences. Present-day thinking emphasizes deterrence and rehabilitation. Few would permanently isolate the offender without regard to the nature of his crime upon a finding of incorrigibility. That course, however defensible in abstract theory, cannot be seriously considered until future behavior is predictable with substantial certainty. The Legislature has adopted that approach only with respect to multiple convictions. Otherwise society may be secured against repetition of crime only within the limit of the maximum punishment authorized for the particular offense.

Expressed in other terms, the prevailing theme is that punishment should fit the offender as well as the offense. *Williams v. People of State of New York,* 337 *U. S.* 241, 69 *S. Ct.* 1079, 93 *L. Ed.* 1337 (1949), rehearing denied 337 *U. S.* 961, 69 *S. Ct.* 1529, 93 *L. Ed.* 1760 (1949), re-hearing denied 338 *U. S.* 841, 70 *S. Ct.* 34, 94 *L. Ed.* 514 (1949); *State v. White,* 27 *N. J.* 158, 184 (1958) (concurring opinion). The presentence report required manda-torily by *R. R.* 3:7–10(*b*) is designed to that end. See *State v. Jenkins,* 32 *N. J.* 109, 114 (1960); *State v. Culver,* 23 *N. J.* 495 (1957), *certiorari* denied 354 *U. S.* 925, 77 *S. Ct.* 1387, 1 *L. Ed. 2d* 1441 (1957), *certiorari* denied 359 *U. S.* 975, 79 *S. Ct.* 884, 3 *L. Ed. 2d* 842 (1959). Except where the Legislature has decreed a mandatory sentence, thereby determining the punishment should fit the offense without regard to the circumstances of the offender, the problem devolves upon the sentencing judge. Our Legisla-ture has not stated the aims to be achieved by punishment. Indeed few Legislatures have, and where they have, the statement has been "too general to be of service." *Model Penal Code* (Tentative Draft No. 2, May 3, 1954), § 1.02, Comment, *p.* 5. The section of the Model Penal Code just cited lists eight general purposes governing the sentence and treatment of offenders:

"(a) To prevent the commission of offenses;
(b) To promote the correction and rehabilitation of offenders;

(c) To safeguard offenders against excessive, disproportionate or arbitrary punishment;

(d) To give fair warning of the nature of the sentences that may be imposed on conviction of an offense;

(e) To differentiate among offenders with a view to a just individualization in their treatment;

(f) To define, co-ordinate and harmonize the powers, duties and functions of the courts and of administrative officers and agencies responsible for dealing with offenders;

(g) To advance the use of generally accepted scientific methods and knowledge in the sentencing and treatment of offenders;

(h) To integrate responsibility for the administration of the correctional system in a State Department of Correction [or other single department or agency]."

But the Model Penal Code eschews the prescription of a formula for their application. The comment states in part (at *p.* 4):

"* * * The section is drafted in the view that sentencing and treatment policy should serve the end of crime prevention. It does not undertake, however, to state a fixed priority among the means to such prevention, *i. e.,* the deterrence of potential criminals and the incapacitation and correction of the individual offender. These are all proper goals to be pursued in social action with respect to the offender, one or another of which may call for the larger emphasis in a particular context or situation."

No single aim or thesis can claim scientific verity or universal support. Agreement can hardly be expected until much more is known about human behavior. Until then, the sentencing judge must deal with the complex of purposes, determining in each situation how the public interest will best be served. See Hart, *"The Aims of the Criminal Law,"* 23 *Law and Contemporary Problems* 401 (1958). His answer will be a composite judgment, a total evaluation of all the facets, giving to each the weight, if any, it merits in the context before him. There can be no precise formula. The matter is embedded deeply in individual discretion.

As we have said, the judge must decide in what way the interest of the public will best be served. He seeks justice to society as well as to the individual, and of course

justice to the individual is itself a phase of justice to the community. If the offense has strong emotional roots or is an isolated event unassociated with a pressing public problem, there is room for greater emphasis upon the circumstances of the individual offender. On the other hand, if the crime is a calculated one and part of a widespread criminal skein, the needs of society may dictate that the punishment more nearly fit the offense than the offender. There the sentencing judge may conclude he should give priority to punishment as a deterrence to others and as an aid to law enforcement. The doubts that may beset the deterrent effect of punishment when the crime is steeped in emotional pressures recede sharply when the motivation is pecuniary and the criminal event is part of a calculated "business" venture. If the prevailing thinking does not strongly support this view, at least no one can demonstrate that those who act upon it do so without legal warrant.

Here we are dealing with organized crime. The offense is in no sense an isolated excursion beyond the pale of the law induced by engulfing circumstances. It may be such as to the particular individual at the bar, and if he alone were implicated in the criminal operation, a judge might well deal with him as he would with other first offenders. But when the offense serves the interests of a widespread conspiracy, it would be a mistake to think of the defendant as an isolated figure. He is part and parcel of an enterprise. The gambling racket is an ancient foe of society. It bilks the weak. It wrecks homes and destroys men. It spawns embezzlement, larceny and crimes of violence. It corrupts officialdom. It is reputed to be allied with other illicit traffic. The "easy" money it yields doubtless finds its way under cover into legitimate fields, there to continue its polluting course.

Such is the scene a judge should see in dealing with an offense of this kind. He would be myopic if he saw no more than the defendant before him. As the trial court aptly observed, a fine would be a license fee for the opera-

tors—a minor experience in a lucrative venture. A racket cannot be curtailed if fronts and tools are easily available, and they will be unless the price is too high.

We find no illegality in the position of the trial court. More than that, we affirmatively agree with his exercise of his discretion. *N. J. S.* 2A:112–3 provides for a *minimum* fine of $1,000 or a *minimum* jail sentence of one year or both. In requiring minimum punishment, the Legislature expressed a stern view of the criminal act itself. It wisely allowed some room for appraisal of individual cases. If the sentencing judge believes the gambling offense is isolated and involves but the defendant himself, he may deal with the offender at the lower end of the scale of punishment. But if the statutory prescription means anything, it must mean that if the crime is part of a larger operation, it merits stern treatment. The trial judge wisely coordinated that policy with the social gain in the redemption of the individual. He offered defendant a chance to make a clean breast of his associations. The offer had a dual purpose. It tested the capacity of defendant for rehabilitation by lesser punishment. It also sought to obtain for law enforcement officials the aid they need if they are to succeed in their exhausting efforts to stamp out syndicated crime or at least to hedge it in.

The judgment is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.