THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. GEORGE ARTIS AND NATHANIEL ROBERTS, DEFENDANTS, AND THOMAS KNIGHT, DEFENDANT-APPELLANT.

Decided February 19, 1962.

Mr. H. Harding Brown argued the cause for the defendant-appellant (Messrs. Epstein, Epstein, Brown & Bosek, attorneys).

Mr. Ralph De Vita, Union County Assistant Prosecutor, argued the cause for the plaintiff-respondent (Mr. H. Douglas Stine, Union County Prosecutor, attorney; Mr. S. David Levy, of counsel and on the brief).

PER CURIAM. The appellant Thomas Knight together with George Artis and Nathaniel Roberts was convicted of murder in the first degree with a recommendation of life imprisonment. This appeal concerns the denial by the trial court of Knight's motion for a new trial.

At the trial which resulted in their convictions, it was proved that Artis, Roberts and Knight robbed a tavern at about 2:00 A. M. on July 26, 1959, and while in the process Artis shot and killed one of the patrons. It was clearly established that Knight and Roberts actively participated in the robbery; Knight brandished a knife and Roberts rifled the tavern's cash box. There was also testimony Knight took money from the patrons. After the murder the three fled in an automobile which Knight had admittedly stolen.

In his statement given to the police after he was apprehended, Knight said he met Artis and Roberts and "They said, 'Hey, you got a car' they said, 'we're going to do a little job.' " Then Knight stole an automobile, picked up

Artis and Roberts and drove to the tavern. Knight admitted following Artis into the tavern, but denied knowing Artis had a gun. He "got scared" when he saw Artis holding the gun. He said that after the shooting he left the tavern alone and returned to the automobile. Artis and Roberts followed shortly behind and the three drove away.

Although Artis and Roberts had given the police statements which were introduced at the trial to implicate them, they did not take the stand. However, Knight testified in his own behalf after the statement he had given to the police was put in evidence. He admitted stealing the car "because Roberts told him he had a little job he wanted to do," but denied knowing what Roberts meant by "a job." He stated that when he entered the tavern he expected to "socialize" with Artis and Roberts and that he first became aware of the planned robbery when he saw Artis wielding a gun. He denied any voluntary participation in the robbery but said he drew his "shank" (knife) after Artis or Roberts told him to, and acted as a participant because he feared Artis might use the gun on him. He also testified that after the robbery he received none of the money and that he was told by Roberts "that if I go to the police that I'll be done up."

The jury returned its verdict on February 19, 1960. None of the defendants appealed. On December 28, 1960, more than ten months after the verdict, Knight made a motion before Judge Barger, who had presided at the trial, for a new trial based on the following grounds: (a) newly discovered evidence; (b) his admissions to the police were improperly received in evidence as a "confession"; and (c) he was entitled to a severance prior to the trial.

The "newly discovered evidence" consisted of affidavits of Roberts and Artis made on December 28, 1960. They stated "Knight had no knowledge of this crime, and did not participate in any way of his own free will, and did not receive any money taken in the robbery"; that Artis and Roberts planned the holdup; that Roberts asked Knight

to get a car without informing him of the purpose; that Knight supplied the transportation but never knew of the intended robbery until he was forced at gun point by Artis in the tavern to become a participant. By supplemental affidavits Artis and Roberts stated they would voluntarily testify to the facts contained in their original affidavits.

At the hearing on Knight's motion, the court held two of the grounds, *i. e.,* (1) Knight's admissions were improperly received in evidence as a "confession" and (2) he was entitled to a severance, could not properly be argued because they were raised long after the expiration of the period set forth in the rules governing the time for appeal and the time in which a motion for a new trial based on such grounds may be made. 1:3–1(a), 3:7–11(a), 1:27B(c) and (d). Nevertheless the court considered the merits of these grounds and held them to be without substance. On the question of "newly discovered evidence," the court, after considering the affidavits and the record of the trial, found the affidavits were unbelievable and held Knight had not shown "sufficient cause for the Court to grant further relief for the taking of oral proofs." It therefore denied the motion. This appeal is from that order. *R. R.* 1:2–1(c).

██ A motion for a new trial is addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of that discretion. *State v. Smith,* 29 *N. J.* 561, 573 (1959). To entitle a party to a new trial on the ground of newly discovered evidence, the new evidence must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the original trial and not discoverable by reasonable diligence prior thereto; and (3) of the sort which would probably change the jury's verdict if a new trial was granted. *State v. Johnson,* 34 *N. J.* 212, 222 (1961); *State v. Bunk,* 4 *N. J.* 482, 486 (1950). To sustain a motion for a new trial the proffered evidence must meet all three aspects of the test. *State v. Johnson, supra,* at *p.* 223.

542

We initially consider whether the affidavits meet the third element of the test. If they do not, we need not decide whether the first two elements are satisfied.

Knight contends the affidavits of Artis and Roberts are believable and introduction of their testimony to the same effect at a new trial will probably result in his obtaining a favorable verdict. He argues the affidavits accord with his trial testimony that he was an innocent party forced to participate in the crime, and that the State's evidence was "weak" in showing that he had the necessary intent to commit the crime. From this he concludes, "The newly proffered evidence overbalances the scale in defendant's favor."

In our view the State's evidence as to Knight's intentional participation in the crime was far from weak. On the contrary it was overwhelming. Knight from his own lips twice (his statement to the police and his testimony) stated that he stole a car for the purpose of doing "a little job" and drove Artis and Roberts to the tavern. He admitted that during the robbery he used his knife to help insure the success of the holdup. Eyewitnesses testified he collected money from the patrons and took an active part in keeping them cowed. None of the witnesses, other than Knight, even intimated that Knight's role in the robbery was not of his own making. From this evidence the jury could well find that Knight was, from the very beginning, a willing member of the criminal trio. Indeed, it is hard to believe the jury could reach any other conclusion.

The persuasiveness of the affidavits must be measured in the light of the above evidence and the sworn statements given by Artis and Roberts to the police after they were apprehended. Artis' statement was given on July 30, 1959, and Roberts' the following day. These statements clearly show that Knight was neither an unknowing nor unwilling actor in the commission of the crime. Indeed, from them we learn that it was Knight who first suggested the trio commit a holdup; that while they were riding in the stolen

car the plans were formed, Artis to be the gunman and Knight the knifeman to "keep the people covered" while Roberts would "get the money"; that the proceeds of the robbery were divided equally among the three. Then ten months after having been sentenced to life imprisonment, Artis and Roberts executed affidavits in which they completely reversed their stories as to Knight's part in the crime. Knight, instead of being one of the formulators of the nefarious scheme, is suddenly cast in the role of a naive friend who was forced to play a part in the crime.

In view of the flagrant contradictions between their sworn statements to the police and their affidavits made in Knight's behalf, we are satisfied that the testimony of Artis and Roberts would not in any way influence the jury. The two have little to lose by recanting from their prior statements to the police; they were content with having escaped the death penalty and did not appeal. See *State v. Vaszorich,* 13 *N. J.* 99, 131 (1953). Since this would be obvious to the jury at a new trial, plainly the proffered evidence would not "probably change the jury's verdict if a new trial was granted." Therefore, since the evidence fails to meet the third element of the test governing new trials based on "newly discovered evidence," we conclude that Judge Barger properly exercised his discretion when he denied Knight a new trial.

The other points raised on this appeal are also inadequate to warrant a new trial. They are not only untimely but also are without substance.

In applications of the type here under consideration, the trial judge would follow better practice if he took the testimony of an affiant in open court so that he could observe him under direct and cross-examination. This procedure is particularly desirable where an affidavit leads a judge to believe there may be facts which if proved by credible oral testimony would probably alter a jury's verdict. The trial judge could then determine whether the affiant's testimony tested by cross-examination is in accord with the affidavit

544

and if such testimony would probably lead to a different result at a new trial. However, in the present case the trial court assumed that the testimony of Artis and Roberts would be the same as their affidavits and of course, since this assumption was beneficial to Knight, he cannot complain. Their testimony would have been completely negated by their prior sworn statements and the evidence of Knight's activities as described at the original trial.

The order of the trial judge denying the motion is affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For reversal*—None.