104 N.J. Super. 578 (1969)
250 A.2d 771
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CARMELO VELAZQUEZ, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 3, 1969.
Decided February 27, 1969.
*579 Before Judges GAULKIN, COLLESTER and LABRECQUE.
Mr. Gaetano J. Alaimo argued the cause for appellant.
Mr. Alan J. Pogarsky, Assistant County Prosecutor argued the cause for respondent (Mr. Robert H. Doherty, Jr., attorney).
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant was found guilty on 12 counts of an indictment which charged him with working for a lottery business in violation of N.J.S. 2A:121-3(a). *580 He was sentenced to a prison term of 1-2 years on the first count and the same sentence was imposed on the remaining 11 counts to run concurrently. He appeals.
The State's evidence showed that on 12 days between January 9 and February 23, 1967 Raymond Feldherr, a member of the New Jersey State Police, placed lottery bets with the defendant at his grocery store, known as Fanny's Market, which is located in Jackson Township. On March 6, 1967 police officers, armed with a search warrant, raided the market and seized a lottery slip containing two numbers bets which was found on a shelf behind a counter. The defendant was not present and his wife Epifania was in charge of the store. Velazquez admitted that Feldherr had been in his store about once a week between January 6 and March 6, but denied he had ever accepted lottery bets from the officer.
Defendant's first point is that the court erred in denying his motion for an acquittal at the close of the State's case on the ground of entrapment and, in the alternative, by failing to charge the jury on the law of entrapment. The record clearly indicates that there was no evidence of entrapment by the police. Mere solicitations by officers posing as private citizens and resulting in the acceptance of bets have repeatedly been held not to give rise to any entrapment issues. State v. Dennis, 43 N.J. 418, 425 (1964). Regarding the court's failure to instruct the jury on the law of entrapment the short answer is that no request to so charge was submitted and no objection was made to the court's failure to do so. We find no plain error. Ibid., at pp. 424-425.
We find no merit in the contention that the verdict was the result of mistake and contrary to the weight of the evidence. There was ample evidence to support the jury's finding that the defendant was engaged in the lottery business in violation of the statute.
Defendant also claims that the court erred in failing to instruct the jury that if it found defendant's testimony *581 not to be credible, the State still had the burden of proving his guilt beyond a reasonable doubt. Our examination of the charge indicates that the court adequately instructed the jury on the subject of credibility of the witnesses and the State's burden of proof. We find no error.
It is also argued that the verdict of the jury was defective because it appeared to be the result of a compromise. We find no support for this contention in the record.
Defendant's final argument is that the sentencing judge (one other than the trial judge) indicated that he had not considered mitigating factors when he sentenced the defendant because he said he was "a little nearsighted as far as our gambling statutes are concerned." We do not construe this remark to imply that the sentencing judge did not properly exercise his discretion in determining the sentence to be imposed.
Affirmed.
GAULKIN, S.J.A.D. (dissenting in part).
I agree with the majority, except that it seems to me that the sentence was too severe.
I am well aware of the considerations involved in sentencing in gambling cases, stated in State v. De Stasio, 49 N.J. 247 (1967), and State v. Ivan, 33 N.J. 197 (1960), and I agree to their importance. However, I find nothing in either opinion that says everyone convicted of a gambling violation, who does not reveal his employers and accomplices, must go to prison. It seems to me that defendant here was sentenced to 1-2 years in State Prison only because he would not implicate others, in spite of the fact that everything about him and his family cried out for probation and a fine or, at most, with a brief jail sentence.
De Stasio conceded that only the Legislature can make a prison sentence mandatory in every case, and the majority opinion said:
*582 "Defendant urges a number of constitutional challenges, all based upon a hypothesis the directive [that only one judge sentence in all gambling cases] does not contain, i.e., that the sentencing judge is required to send to State prison everyone convicted of a gambling crime unless the defendant cooperates with the State by giving evidence against his superior in the criminal hierarchy. There is no such order to the sentencing judge, and in fact the record of sentencing in Essex County shows that each sentencing judge has differentiated among offenders or classes of offenders." (at p. 255)
DeStasio stressed that the purpose of the directive was to achieve "uniformity of treatment" of offenders, but that was to be achieved not by imposing the same sentence upon every defendant but rather by having only one judge exercise the discretion upon what sentences to impose. Naturally, there is less diversity in differentiation among offenders when only one judge sentences than when many do. That, I believe, was the reason for the directive.
In De Stasio the Supreme Court stated that the sentencing judge still may exercise "his own discretion"; that it had "not dictated a course for the sentencing judge"; and that all it did was to express a hope, but had given no order, that "the sentencing judge would see the judiciary's responsibility as we see it."
The sentencing judge is adjured, in De Stasio and in Ivan, to consider the gravity of organized gambling, but nowhere is it said that the individual defendant is not to be given the same consideration that he would receive if he were charged with another crime. As Justice Jacobs said in De Stasio, for himself and Justices Schettino and Haneman:
"* * * No defendant, even in gambling cases, is just the same as every other defendant. He is an individual human being with his own background and future and is entitled to be dealt with as such. His sentence, though it may appropriately be severe, should nonetheless be a just one imposed by the trial judge, as in all other cases under the prevailing system, after he has carefully considered and duly weighed all of the circumstances and all of the societal and individual interests involved. * * *." (at p. 262)
In Ivan the court said that in a gambling case a sentencing judge "would be myopic if he saw no more than the defendant *583 before him." But I submit that he is equally myopic when he does not see the gambling defendant and his circumstances as clearly as if he had been found guilty of any other crime. There probably was such myopia here, for the judge said:
"As the attorneys know, who appear before me, a judge who only sees you in a gambling case, you as a defendant, is a little nearsighted as far as our gambling statutes are concerned. Gambling is wide-spread, participated in by a segment of our population, and your children and your reputation and your friends, those things should have been in your mind before you embarked on this activity."
The presentence report should mean as much in a gambling case as it does in any other case. Here the presentence report showed that defendant was 39 years old, married and the father of six children, 10 to 17 years of age, all of whom were attending school. He arrived here from Puerto Rico in 1948 and has been steadily employed since that time. He had no prior criminal record. A short time after he arrived in this country he became a part-owner of a grocery store in Jersey City, where he resided for 12 years. He then sold his interest in the Jersey City store and opened a similar store in Jackson Township. The presentence report states that defendant helps support his mother, who resides in Jersey City, and pays her rent, and adds:
"* * * It appears that Velazquez and his wife are happily married. The defendant characterized his marriage as being quite stable. Six children have been born of this union * * *. All of the children are presently enrolled in school and the defendant states that he has never had any problems with them. Subject's wife, Epifania, age 40, does not appear to be too well educated. She speaks and understands very little English. Epifania does not work outside of the home although she sometimes helps her husband run his store."
The presentence report points out that defendant has been struggling to keep up the mortgage payments on his home and "is still paying back taxes * * * he owes money in two banks and also is behind payments on a loan from a *584 loan company * * *." He was vice-president of a Spanish-American political club and active in church affairs. The judge acknowledged that he had received many letters vouching for defendant.
But the report said:
"Mr. Velazquez states that the Ocean County Prosecutor's Office has asked him to testify against other people involved in this type of operation. The defendant states that he will not do this because he is afraid of what might happen to himself as well as his family."
and concluded:
"It seems apparent that this man became involved in this type of operation because of his financial difficulties. This officer believes that Velazquez is only a small person in an organized gambling organization. His unwillingness to testify against other parties would also indicate this. It is respectfully suggested that the Court take this into consideration when sentencing."
It seems to me that the sentence of 1-2 years in State Prison has not given sufficient weight to the defendant's good record, the circumstances of his involvement or, most important, the impact on him, his wife and his family. This man has struggled against odds to make a life for himself and his family in a new land. He has succeeded in supporting them for many years, and in maintaining his children in school. If placed on probation he doubtless will continue to do so. What will be the effect on this man's family if he is sent to prison? The wife is unable to speak English and has no trade or occupation. The family has no assets. Not only the store but the home will be lost. Very likely the older children will be forced to leave school. Probably the whole family will have to seek relief. And what of the effect on defendant of a stay in State Prison while his home and business disappears and his family suffers? It is not pretended that defendant needs rehabilitation or that he will come out of State Prison a better man. The miracle will be if he does not come out a much worse one, *585 embittered by what must appear to him to be a savage sentence. And to what end? The blow to this man and his family, including his innocent children, is far more devastating than the problematical incidental damage it may do to organized gambling.
If this man is not entitled to probation, I do not know who could be. I would set aside the present sentence and direct the imposition of a sentence of probation and a fine.