167 N.J. Super. 503 (1979)
401 A.2d 274
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT AND CROSS-APPELLANT,
v.
JOHN SANDUCCI, DEFENDANT-APPELLANT AND CROSS-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 16, 1979.
Decided April 25, 1979.
*505 Before Judges LORA, MICHELS and LARNER.
Mr. K. David Wilensky argued the cause on behalf of appellant and cross-respondent (Mr. Larry Bronson, attorney).
Ms. Anne C. Paskow, Deputy Attorney General, argued the cause on behalf of respondent and cross-appellant (Mr. John J. Degnan, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by MICHELS, J.A.D.
Defendant John Sanducci appeals from the trial judge's denial of his motion for a new trial, brought on the ground of newly discovered evidence, and from his refusal to amend his custodial sentence to permit his release from State Prison because of illness, pursuant to R. 3:21-10(b). The State cross-appeals from the trial judge's reduction of defendant's sentence, contending that the trial court lacked jurisdiction to reduce defendant's sentence by virtue of the time bar of R. 3:21-10(a).
Briefly stated, the relevant facts are as follows. After a lengthy jury trial defendant was convicted of threatening to kill Dr. Herve Bryon for purposes of extortion (N.J.S.A. 2A:105-4) and, on June 27, 1975, was sentenced to State Prison for 10 to 15 years. Defendant appealed the conviction and the sentence imposed thereon. Execution of the sentence *506 was stayed pending appeal. On June 3, 1977 we affirmed the judgment of conviction but remanded the matter to the trial court for an amended statement of reasons for the sentence, retaining jurisdiction solely for the purpose of considering the claimed excessiveness thereof. State v. Sanducci, 150 N.J. Super. 400 (App. Div. 1977). On June 6, 1977 the trial judge amended his reasons, in conformance with our remand, stating in part:
The defendant is being sentenced for a serious crime of threatening the life of his proposed victim and should serve a long term of imprisonment to act as a deterrent to others. The Court's concern for the defendant's rehabilitation does not outweigh its deep interest in the right of law-abiding persons to live in our society without fear of terror tactics such as that shown by the defendant. Sympathy and compassion for those committing such crimes must remain secondary to the law's duty to maintain public safety.
On June 16, 1977, while the appeal was still pending, defendant moved to set aside his conviction on the ground that "the State did not truly represent that, in fact, there was an agreement between the main State witness [DeStefano] and the State," and alternatively, for reconsideration and modification of his sentence for health reasons. On June 28, 1977 these motions were dismissed without prejudice. On June 29, 1977 we affirmed the amended judgment in an unpublished opinion, State v. Sanducci, Docket No. A-3951-74, and on September 12, 1977 the Supreme Court denied certification. State v. Sanducci, 75 N.J. 524 (1977).
On October 13, 1977 defendant again moved for a new trial and modification of his sentence. While the record is not entirely clear, it appears that the motion, which was made returnable on October 21, 1977, was adjourned from time to time, but never heard or decided. On March 2, 1978, after defendant retained other counsel, he moved for a third time to set aside his conviction and to suspend his sentence. Following a lengthy plenary hearing the trial judge denied both motions. While the judge refused to amend defendant's custodial sentence to permit his immediate release from prison *507 because of defendant's illness, he nevertheless reduced defendant's State Prison sentence of 10 to 15 years to 3 to 5 years, stating:
* * * I'm torn between my concern for the seriousness of the offense for  which I imposed a ten to fifteen-year term with the defendant's condition which has changed since I originally imposed the sentence, and at this time I am going to reduce the sentence to a term of not less than three nor more than five years.
I will not suspend the sentence. I'm satisfied that his condition of [health] has deteriorated. The health condition as I've outlined, as I've stated it to be does not warrant a suspension. I feel that he can get the necessary treatment in prison, but that a combination of the diabetes and the heart and the ten or fifteen years term would be too long a term, that considering the  all of these facts that three to five-year term is warranted.
This appeal followed.

Denial of Motion for New Trial
Defendant's new trial motion was grounded on a claim that the State had entered into an agreement with DeStefano  the key prosecution witness  the terms of which were alleged to be that in return for DeStefano's testimony the State would not prosecute him for his participation in the extortion scheme and would also pay him a given sum of money. Defendant also claimed that DeStefano's testimony concerning this issue was perjurious, and that the existence of this agreement and the perjured testimony was not discovered until after he was convicted. Defendant contends, therefore, that the trial judge erred in denying his motion for a new trial based on newly discovered evidence. We disagree.
We are convinced from our study of the entire record that the denial of the motion for a new trial is amply supported by sufficient credible evidence. At the hearing on the new trial motion DeStefano affirmatively testified that he was neither promised anything in return for his testimony nor received anything for testifying for the State at defendant's *508 trial, and reaffirmed his prior trial testimony concerning this subject. DeStefano's testimony was corroborated by other evidence at the hearing, including the testimony contained in the affidavits of Investigator Denning, Lieutenant Delia and Assistant Prosecutor McClure, which were marked in evidence. Moreover, DeStefano maintained that his statement to defendant's brother about being paid by the State for his testimony, and the State's promise not to prosecute in exchange for his cooperation were, in fact, false, saying he told Sanducci's brother "just what he wanted to hear, to keep him away," so that he (defendant's brother) would leave him alone.
The criteria by which a motion for a new criminal trial is determined, when brought on the ground of newly discovered evidence, are enumerated in, among other cases, State v. Artis, 36 N.J. 538 (1962):
A motion for a new trial is addressed to the sound discretion of the trial court, and its determination will not be reversed on appeal unless there has been a clear abuse of this discretion. State v. Smith, 29 N.J. 561, 573 (1959). To entitle a party to a new trial on the ground of newly discovered evidence, the new evidence must be (1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the original trial and not discoverable by reasonable diligence prior thereto; and (3) of the sort which would probably change the jury's verdict if a new trial was granted. State v. Johnson, 34 N.J. 212, 222 (1961); State v. Bunk, 4 N.J. 482, 486 (1950). To sustain a motion for a new trial the proffered evidence must meet all three aspects of the test. State v. Johnson, supra, 34 N.J. at p. 223. [at 541]
In view of the foregoing it is enough to say in the instant case that there is simply no indication that the allegedly newly discovered evidence would change the jury's verdict, particularly given DeStefano's testimony at the plenary hearing that his statements to Sanducci's brother were false. Hence, since a defendant will prevail on a new trial motion of this sort, as pointed out in Artis, only where "all three aspects of the test" are met, we need only address this single element in reaching our determination that the denial of the motion in the instant case should be affirmed.
*509 We further observe that the cases of Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959); State v. Carter, 69 N.J. 420 (1976); State v. Taylor, 49 N.J. 440 (1967), and State v. Blue, 124 N.J. Super. 276 (App. Div. 1973), relied upon by defendant, are plainly distinguishable and do not mandate a reversal of either his conviction or the denial of his motion for a new trial. In Napue the prosecution at the time of trial was aware of the false testimony being given by one of its witnesses; in Carter prosecution witnesses recanted original trial testimony; in Taylor defendant was prevented from inquiring of a prosecution witness as to the existence vel non of any agreement with the State into which the witness may have entered, and in Blue defendant was wholly precluded from introducing evidence which materially would have impeached the State's principal witness. None of these circumstances parallels the instant case.
Accordingly, we are convinced that the trial judge properly exercised his discretion by denying defendant's motion for a new trial which was brought on the ground of newly discovered evidence. State v. Smith, 29 N.J. 561, 573 (1959), cert. den. 361 U.S. 861, 80 S.Ct. 120, 4 L.Ed.2d 103 (1959); State v. Artis, supra; State v. Levitt, 36 N.J. 266, 272 (1961). The denial of the motion did not constitute a manifest denial of justice.

Denial of Motion to Amend Custodial Sentence to Permit Defendant's Release from State Prison.
Defendant also challenges the trial judge's refusal to suspend his sentence. On January 29, 1976, following the imposition of sentence and while the first appeal was pending, defendant suffered a heart attack and was hospitalized from January 29 until February 24, 1976. Thereafter, he experienced chest pains and other symptoms of heart disease. On December 13, 1977 defendant was hospitalized again following an episode of blacking out and chest pains. In *510 addition to his heart condition, defendant suffers from both a chronic pulmonary condition and diabetes of long standing. He claims that, in view of his poor state of health, particularly his severe heart condition and long standing diabetic condition, both of which require continued treatment and medication, the trial judge erred in failing to amend his custodial sentence to permit his immediate release from State Prison pursuant to R. 3:21-10(b)(2).
We have carefully reviewed the entire record, including the testimony of Dr. Huerta C. Neals, who appeared for defendant, and Dr. Murray Weinstock, who appeared for the State, and are firmly convinced that the trial judge did not mistakenly exercise his discretion in denying defendant's motion to suspend the custodial sentence. The judge could reasonably have found that defendant's poor physical condition did not warrant suspension of the sentence, particularly in view of the fact that medical care and treatment required for his condition would be available in State Prison. Moreover, consideration of all of the factors, especially the serious nature of the crime and the circumstances attendant upon its commission, compels the conclusion that the trial judge properly denied his motion. The purposes underlying the continuation of defendant's custodial sentence outweigh any interest which might be served by suspending it. Cf. State v. Tumminello, 70 N.J. 187, 195 (1976).
Accordingly, the trial judge's denial of defendant's motion to amend his custodial sentence to permit his immediate release from State Prison because of illness is affirmed.

Reduction of Defendant's State Sentence.
A reduction or change of a sentence is governed by the provisions of R. 3:21-10 which, in pertinent part, read as follows:
(a) Time. Except as provided in paragraph (b) hereof, a motion to reduce or change a sentence shall be filed not later than 60 days after the date of the judgment of conviction, or, if a direct appeal *511 is taken, not later than 20 days after the date of the judgment of the appellate court. The court may reduce or change a sentence, either on motion or on its own initiative, by order entered within 75 days from the date of the judgment of conviction or, if a direct appeal was taken, within 35 days of issuance of the judgment of the appellate court, and not thereafter.
(b) Exceptions. A motion may be filed and an order may be entered at any time (1) changing a custodial sentence to permit entry of the defendant into a custodial or non-custodial treatment or rehabilitation program for drug or alcohol abuse, or (2) amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant or (3) changing a sentence for good cause shown upon the joint application of the defendant and prosecuting attorney.
The trial court is empowered by R. 3:21-10(b) (2) to amend a custodial sentence to permit the release of a defendant because of illness or infirmity. It does not, however, authorize a reduction of a defendant's sentence for these reasons without the concurrence of the prosecutor. An application for a reduction or change of sentence by a defendant is governed by and must be made within the time periods set forth in R. 3:21-10(a). The time limitations set forth in this subsection of the rule are to be strictly construed and cannot be relaxed or enlarged. R. 1:3-4(c); State v. Tumminello, supra, 70 N.J. at 191-192, n. 1; State v. Tully, 148 N.J. Super. 558, 562 (App. Div. 1977), certif. den. 75 N.J. 9 (1977). See also, Pressler, Current N.J. Court Rules, Comment to R. 3:21-10. Hence, a motion for a reduction or modification of defendant's State Prison sentence had to be made within 20 days after the Supreme Court denied defendant's petition for certification on September 12, 1977. See State v. Tumminello, supra, 70 N.J. at 191-192 n. 1; State v. Tillman, 129 N.J. Super. 548 (Law Div. 1974); Pressler, Current N.J. Court Rules, Comment to R. 3:21-10.
We are convinced, therefore, that it was error to reduce defendant's custodial sentence once it was found that the present state of his health did not require his immediate release from prison under R. 3:21-10(b) (2). The trial court clearly had no jurisdiction in this respect since the *512 motion for reduction was not made within the time limitations set forth in R. 3:21-10.
Accordingly, the amended judgment of the trial court reducing defendant's State Prison sentence to a three to five year term is reversed, and the original State Prison sentence of 10 to 15 years is reinstated. The matter is remanded to the trial court for the entry of a further amendatory judgment, reinstating defendant's original 10 - 15 year State Prison sentence.