found in the nature of the transaction. Justice Brennan there wrote:

Moreover, plaintiff does not come under the protection of the decisions holding that real estate brokerage licenses are not necessary where services beyond those of a mere broker are to be performed. Agreements requiring services beyond the mere listing for and negotiating of sale of the real estate of another may be actionable when the facts support an inference the one rendering these services is not a mere broker but a promoter; *Montgomery v. East Ridgelawn Cemetery*, 189 *Misc.* 99, 68 *N.Y.S.2d* 836 (*Sup.Ct.*1947); affirmed [272 *A.D.* 1048] 75 *N.Y.S.* 2d 287 (*App.Div.*1946), construing *R.S.* 45:15–3 of New Jersey statute; or a developer whose services also require him to improve the owner's lands, *Ruta v. Werner*, 1 *N.J.Super.* 455 (*Ch.*1948); or whose agreement is with another broker in a joint promotion venture to sell lands of a real estate development company. *Chew v. Markheim*, 125 *N.J.L.* 595 (*Sup.Ct.*1941).

For the foregoing reasons we are constrained to affirm the summary judgment entered in the Law Division. No costs.

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
WILLIAM TODASH, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted December 16, 1980—Decided February 20, 1981.

Before Judges FRITZ, POLOW and JOELSON.

*Richard E. Gehret,* for appellant.

*John J. Degnan,* Attorney General of New Jersey, for respondent (*Rocky L. Peterson,* Deputy Attorney General, of counsel and on the brief).

PER CURIAM.

While defendant's attack employs a variety of mortars and launching pads, essentially this is an appeal asserting solely that the sentence imposed upon defendant is excessive because a custodial term is included. We have reviewed the several arguments put forth in the brief in chief and the reply brief of defendant. We are loath to say that any is frivolous. On the other hand, none of these seems sufficient by itself or in combination with the others to warrant the wholesale intrusion upon the articulately exercised discretion of the sentencing judge which would be necessary for a reversal.

Put another way, in order to reverse it would be necessary for us to concede substantial limitations upon the admittedly discretionary function of sentencing. This concession would require giving overriding effect to such considerations as an unexpressed understanding of defendant with a prior attorney as to what the judge taking the plea thought the negotiated plea was, irrespective of the words which were used by both State and defendant in expressing this plea on the record. Or to a prior impressive employment history and the absence of any previous participation in criminal events. Or to the doubtful quality of defendant's health and the recommendation of the probation

officer that the sentence imposed be one of probation coupled with a lengthy suspended sentence. Or to the willingness of defendant to cooperate in the prosecution of others. Irrespective of whether we view each of these alone, in combination or in the aggregate, we think we should not assign it or them a peremptory position. Accordingly, we are unwilling to reverse.

Woven throughout defendant's *ad hominem* presentation is yet another attack on the forthrightness of *State v. Ivan*, 33 *N.J.* 197 (1960). The substance of this is that, as was noted in *State v. Souss*, 65 *N.J.* 453. (1974), *Ivan* was never intended inexorably to mandate a custodial sentence. The argument is not apposite here, because irrespective of what else the sentencing judge might have said, he indicated his agreement with that proposition. He said:

> I want to dispel that I thought that at the time of the original sentencing I was under the impression that I could not suspend sentence. I certainly was aware that I could have done so and imposed a five year probationary term, a substantial fine, and was not bound to incarcerate. Carceration [*sic*] was imposed for reasons which I stated at considerable length on the record.

With a sensitivity equal to that with which we have considered defendant's several arguments, we note as well the portion of the record which deals with defendant's post-negotiation but pre-sentence understanding of that which might be in store:

> THE COURT: Do you realize that you could receive anything up to— Is it three years in prison, gentlemen?
>
> [DEFENDANT'S ATTORNEY]: And a $25,000.00 fine. This is a crime in the third degree under 2C, your Honor.
>
> THE COURT: Under the old law—
>
> [DEFENDANT'S ATTORNEY]: One, two, three mandatory State Prison, as I understand it, your Honor.
>
> THE COURT: That you could receive anything up to three years in prison, and plus a fine up to $25,000.00? Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Are you guilty of this offense?
>
> THE DEFENDANT: Yes.

Obviously, defendant is disappointed that his hopes (as contrasted with his reasonable expectations from that which appears in the record) did not materialize. The fact of the matter

remains that the sentence accords with the recorded negotiated plea, is well within statutory limits and represents an entirely reasonable, carefully articulated exercise of discretion by a sentencing judge aware of all factors presently urged except, perhaps, for the medical problems.[1] The care with which the sentencing judge approached the problem and the consideration he gave to the various factors involved, as well as the reasonableness of his determination, are easily understood by recourse to that which he said:

> Mr. Todash is not a first offender in the true sense as opposed to the legal sense because this is not, as Chief Justice Weintraub said [in *Ivan* ], an isolated excursion into crime. Mr. Todash by his own admission violated the law everday time and time again, at least for a period of a year, as he admits, and he did so intentionally knowing and in combination with a number of others also violating the law, and he did so for money. So he gambled with his own future and he lost.

---

[1]On a remand for reconsideration of the sentence while the appeal was pending, the sentencing judge had this to say:

> . . . . What has been presented to me today has certainly been presented in great detail, and I appreciate that which has been stated. However, with the exception of the medical problem it really has not enlightened me over that which I knew it at the time of my original sentencing. It has been more expansive perhaps, but nothing which really changes my thinking.
>
> . . . .
>
> With respect to Mr. Todash's medical condition, I have little at the present time with respect to that, but I observe that under Rule 3:21–10B–2, a motion for reconsideration of sentence for medical reasons can be made at any time. The sixty day time limitation in Rule 3:21–10 is not applicable to such a motion, and therefore in the event that Mr. Todash should have a serious or terminal or disabling medical condition which would warrant reconsideration and reduction of sentence, that can be done on the basis of medical information supplied in conjunction with such a motion for reconsideration of sentence.
>
> Since the matter is presently on appeal bail has been continued and the matter is under the jurisdiction of the Appellate Division. It is apparent that commencement of any incarceration imposed is not eminent [*sic* ], it may be months or a year or more before the Appellate Division concludes its disposition, or the Appellate Courts, whatever it may be is concluded, and I am sure that prior to the time of the commencement of any incarceration the medical condition will be defined a great deal more clearly than it is at the present time.

The other activities which weigh in his favor, his hard work and so forth only lighten his criminal activity. They don't make it legal.

This is organized crime, and by that I don't mean the so-called Mafia. But he was part of a criminal organization, an illegal business and a lucrative one. It was important enough for the State Police to investigate; for the State Grand Jury to indict; for the Attorney General to prosecute, and for the Attorney General to refuse to accept a non-custodial plea bargain and to object to pre-trial intervention.

I don't see why honest people should work hard in lawful pursuits and then watch those who resort to crime and reap illegal rewards go free. Punishment in these gambling cases is essential and more punishment than merely the slap on the wrist of probation which is always argued as the sentence which should be imposed.

While it can be argued that probation is punishment, its primary purpose is to rehabilitate and the present sentence calls for punishment as a lesson and warning to others that similar criminal activity will be met with similar punishment.

If white collar crimes which reveal [sic; reward?] criminals vast amount of monies are not punished, society cannot justify the punishment of a blue collar criminal that steals a television set and sells it for $50 or snatches a purse because they need money.

Defendants in gambling operations are not forced into their business by necessity. They are in the business out of greed, the desire to get big money fast and easy without the hard work that others use to obtain the same end.

If word does not go out to the people in Burlington County that illegal gambling will not be tolerated by the Court I will be telling the people that they can safely engage in such business, and if they are careful they won't be caught, but if they are they will only be sentenced to fine and probation and go right back into business again.

Public justice requires incarceration and I find it appropriate in this case despite the favorable factors in the pre-sentence report.

The record and the arguments of counsel thus viewed, we have approached the matter with the "proper circumspection" required by State v. Whitaker, 79 N.J. 503, 513 (1979). This approach not only persuades us against "a clear and compelling finding of a miscarriage of justice," id. at 514 but convinces us of the rationality of that which the sentencing judge had to say. In such an event we are instructed that, despite our manifest power to modify any criminal sentence that is excessive, we should not interfere.

Accordingly we affirm.