605 A.2d 269

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. G.B., DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued March 17, 1992—Decided April 9, 1992.

Before Judges LONG, BAIME and THOMAS.

*Michael B. Jones*, Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo*, Public Defender, attorney; *Michael B. Jones* of counsel and on the brief).

*Carol M. Henderson,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General, attorney; *Carol M. Henderson* of counsel and on the letter-brief).

The opinion of the court was delivered by

BAIME, J.A.D.

This appeal presents novel questions concerning the procedures and standards to be applied in reviewing sex offender sentences under *N.J.S.A.* 2C:47–4c. That statute permits the Commissioner of the Department of Corrections to move before the sentencing court for modification of a period of parole ineligibility originally imposed upon a sex offender committed to the Adult Diagnostic and Treatment Center (ADTC). At issue is whether the defendant is entitled to be present or represented by counsel at the hearing on the motion, and what standards are to be applied by the court in determining whether a modification of sentence is warranted.

## I.

The facts are not in dispute. Defendant sexually abused his young daughter over a six-year period between 1976 and 1981. We need not recite the sordid details. Suffice it to say, the victim was repeatedly subjected .to intercourse, fellatio and cunnilingus. These acts commenced when the victim was eight years old and continued until she was 14, when she fled from the family home in order to escape defendant's unnatural attentions. Ultimately, defendant pleaded guilty to aggravated sexual assault (*N.J.S.A.* 2C:14–2a) and was sentenced to the ADTC for twenty years. Based upon his finding that the aggravating factors substantially outweighed the mitigating circumstances, the Law Division judge imposed a ten-year period of parole ineligibility. *See N.J.S.A.* 2C:43–6b. We affirmed the judgment and subsequent order denying post-conviction relief in separate unreported opinions.

On September 17, 1990, the Commissioner filed a motion for modification of the sentence pursuant to *N.J.S.A.* 2C:47–4c. The motion was supported by the recommendation of the Special Classification Review Board (SCRB). Accompanying the motion were affidavits submitted by a member of the SCRB and by the Acting Superintendent of the ADTC. In conclusory fashion, these affidavits indicated that defendant "ha[d] been effectively treated and rehabilitated," that further incarceration was "counter-productive to [his] progress in therapy," and that "relapse prevention programs" were available as part of "parole release."

Emphasizing that only the Commissioner was authorized to file the motion, the Law Division judge conducted the hearing without the presence of defendant or his attorney. Following argument by a deputy attorney general who represented the Department of Corrections, the judge denied the Commissioner's motion. This appeal followed. We have expedited disposition of this case because defendant's minimum term expires on May 13, 1992.

## II.

Before addressing the issues presented, we briefly describe the predecessor legislation and the present statutory scheme. The legislative history begins with a joint resolution approved by the Senate and Assembly in 1949, creating a bipartisan commission to examine questions relating to the treatment of habitual sex offenders. *See Report and Recommendations of Commision on the Habitual Sex Offender* (1950). Based upon the thesis that many sex offenses have their genesis in "abnormal mental illness," the Commission suggested that offenders be subject to indeterminate sentences and intensive treatment. *State v. Wingler*, 25 *N.J.* 161, 170–71, 135 *A.*2d 468 (1957). The idea was that sex offenders should be "committed for treatment to a mental or correctional institution" for indeterminate terms and released when "capable of making 'an acceptable

social adjustment.' " *Id.* at 171, 135 *A*.2d 468. In response, the Legislature adopted the Sex Offender Act (*N.J.S.A.* 2A:164-3 through -13), which endorsed the principal recommendations of the Commission.

The Legislature sharply modified the philosophy of the Sex Offender Act when it enacted the Code of Criminal Justice. As we have noted, the primary purpose of sentencing under the Sex Offender Act was rehabilitation. The offender was therefore to be released upon completion of successful treatment and not to be further punished. *See State v. Clark*, 65 *N.J.* 426, 430-36, 323 *A*.2d 470 (1974). In contrast, the Code calls for judges to impose determinate sentences for sex offenses. *N.J.S.A.* 2C:47-3b. The sentencing judge may also impose a minimum term during which the offender is not eligible for parole. *N.J.S.A.* 2C:43-6b; *see also State v. Chapman*, 95 *N.J.* 582, 592, 472 *A*.2d 559 (1984). In cases where the judge imposes a determinate term without setting a period of parole ineligibility, the prisoner may be released when it "appear[s] to the satisfaction of the State Parole Board, after recommendation by a special classification review board appointed by the commissioner that such person is capable of making an acceptable social adjustment in the community." *N.J.S.A.* 2C:47-5. However, where the sentencing judge has fixed a period of parole ineligibility pursuant to *N.J.S.A.* 2C:43-6b, the applicable procedure for parole consideration is quite different. The Code provides that in such a case "[i]f, in the opinion of the commissioner, upon the written recommendation of the Special Classification Review Board continued confinement is not necessary, he shall move before the sentencing court for modification of the sentence originally imposed." *N.J.S.A.* 2C:47-4c. Should the sentencing court vacate or modify the parole ineligibility term, the offender cannot be released until it appears "to the satisfaction of the State Parole Board" that such parole is appropriate. *N.J.S.A.* 2C:47-5.

To recapitulate, *N.J.S.A.* 2C:47-4c is applicable only in those cases in which the sentencing court has imposed a parole

ineligibility term pursuant to *N.J.S.A.* 2C:43–6b. The statute is designed to alleviate the tension between the Code's provision authorizing courts to set mandatory parole ineligibility terms and the Parole Act's section permitting defendants sentenced to the ADTC to be paroled upon the recommendation of a special review board. *State v. Chapman,* 95 *N.J.* at 592, 472 *A.*2d 559. It is against this statutory backdrop that we address the questions raised.

## III.

We hold that a defendant has no right to be present at a hearing on a motion filed by the Commissioner pursuant to *N.J.S.A.* 2C:47–4c, but that his attorney should be permitted to attend and present argument. In our view, a motion for modification of a sentence to the ADTC falls within the purview of *R.* 3:21–10(b)(4). That provision allows the Law Division to change a sentence at any time when "authorized by the Code of Criminal Justice," notwithstanding the otherwise unenlargeable 75–day limitation provided by *R.* 3:21–10(a). *Ibid.; see also State v. Edwards,* 184 *N.J.Super.* 538, 541, 446 *A.*2d 1217 (App.Div.1982); *State v. Sanducci,* 167 *N.J.Super.* 503, 511, 401 *A.*2d 274 (App.Div.1979), *certif. denied,* 82 *N.J.* 263, 412 *A.*2d 770 (1979); *State v. Tully,* 148 *N.J.Super.* 558, 562, 372 *A.*2d 1323 (App.Div.), *certif. denied,* 75 *N.J.* 9, 379 *A.*2d 240 (1977). While it is true that the Supreme Court originally adopted *R.* 3:21–10(b)(4) in order to implement the resentencing provisions of *N.J.S.A.* 2C:1–1d(2), *see State v. Maguire,* 84 *N.J.* 508, 513, 423 *A.*2d 294 (1980); *State v. Robinson,* 198 *N.J.Super.* 602, 604–05, 487 *A.*2d 1304 (Law Div.1984), it has since been applied in conjunction with other sections of the Code authorizing modification of sentence. *See, e.g., State v. Velez,* 119 *N.J.* 185, 574 *A.*2d 445 (1990); *State v. Postal,* 204 *N.J.Super.* 94, 97, 497 *A.*2d 917 (Law Div.1985). By its very terms, the rule is applicable here.

R. 3:16 states that "[t]he defendant's presence is not required at a [hearing on a motion for] reduction of sentence under R. 3:21–10." Generally, motions for modification of sentence focus upon a review of "changed circumstances" that may impact upon the aggravating and mitigating factors originally found by the sentencing judge or otherwise warrant reconsideration. *See, e.g., State v. Priester,* 99 *N.J.* 123, 136, 491 *A.*2d 650 (1984); *State v. Kent,* 212 *N.J.Super.* 635, 642, 515 *A.*2d 1275 (App.Div.), *certif. denied,* 107 *N.J.* 65, 526 *A.*2d 149 (1986). Ordinarily, there is little, if anything, the defendant can add to the facts and circumstances alleged in his moving papers. His presence at the hearing is usually unnecessary. These considerations are equally applicable to the Commissioner's motion for modification of an ADTC sentence. Generally, there is no need for the prisoner to attend. We do not suggest a blanket rule of exclusion. The sentencing judge may grant a defendant's request to be present. The matter is committed to the judge's sound discretion.

We are nevertheless convinced that defense counsel should be present and should be permitted to present argument. Although the Law Division's authority to modify an ADTC sentence under *N.J.S.A.* 2C:47–4c is triggered by a motion filed by the Commissioner upon the recommendation of the SCRB, the proceedings are nonetheless adversarial in nature and both the prosecutor and defendant's attorney are entitled to attend and advance their respective positions. We have long held that "[s]entencing and resentencing hearings as they exist under the New Jersey rules are crucial stages of a trial for which counsel must be available." *State v. Giorgianni,* 189 *N.J.Super.* 220, 230, 459 *A.*2d 1189 (App.Div.), *certif. denied,* 94 *N.J.* 569, 468 *A.*2d 212 (1983); *see also Tully v. Scheu,* 607 *F.*2d 31, 35– 36 (3d Cir.1979). This longstanding rule is equally applicable to a motion for modification of a sex offender's parole ineligibility term.

## IV.

We now turn to the standards and criteria to be applied by the sentencing court in determining whether a motion for modification should be granted. Two distinct analytical models have been suggested. Defendant analogizes the Commissioner's motion to a final administrative agency decision and contends that the sentencing judge should follow the recommendation made unless it is found to be "arbitrary, capricious or unreasonable" or is not supported by "substantial credible evidence." *See Henry v. Rahway State Prison,* 81 *N.J.* 571, 580, 410 *A.*2d 686 (1980); *Campbell v. Dept. of Civil Service,* 39 *N.J.* 556, 562, 189 *A.*2d 712 (1963). The State asserts that the guidelines applicable to motions for release from custodial sentences based on illness or infirmity should be applied. These include such factors as the nature and severity of the crime, the severity of the sentence, the criminal record of the defendant and the risk to the public. *See State v. Priester,* 99 *N.J.* at 137, 491 *A.*2d 650.

We favor a different approach. In determining whether to modify a parole ineligibility term imposed on a sex offender, the sentencing court should reevaluate the aggravating and mitigating factors set forth in *N.J.S.A.* 2C:44–1 a and b in light of the recommendation and report of the Commissioner. In general, aggravating factors "concentrate on the circumstances surrounding the commission of the original offense," *State v. Baylass,* 114 *N.J.* 169, 176, 553 *A.*2d 326 (1989), the moral culpability and background of the offender, *State v. Flores,* 228 *N.J.Super.* 586, 593, 550 *A.*2d 752 (1988), *certif. denied,* 115 *N.J.* 78, 556 *A.*2d 1220 (1989), and the risk of recidivism, *State v. Yarbough,* 100 *N.J.* 627, 636, 498 *A.*2d 1239 (1985), *cert. denied,* 475 *U.S.* 1014, 106 *S.Ct.* 1193, 89 *L.Ed.*2d 308 (1986). Mitigating factors focus on defendant's "amenability to serve his or her sentence as a lawful member of society" and include his or her "ability to lead a law-abiding life." *State v. Baylass,* 114 *N.J.* at 177, 553 *A.*2d 326. Imposition of a parole ineligibili-

ty term rests upon the sentencing court's finding that "the aggravating factors substantially outweigh the mitigating factors." *N.J.S.A.* 2C:43–6b. The extent to which a sex offender has responded to treatment may well have a direct bearing on whether the aggravating factors originally found to exist by the sentencing court have continued efficacy. For example, progress in the offender's rehabilitation and social adjustment while committed to the ADTC may have substantially reduced the risk that he will commit another offense, an aggravating factor set forth in *N.J.S.A.* 2C:44–1a(3). So too, the ADTC's treatment of the offender's psychological problems may have significantly advanced the policy of personal deterrence, an aggravating factor under *N.J.S.A.* 2C:44–1a(9). Stated somewhat differently, the offender's progress in therapy might affect the sentencing court's view regarding the presence of aggravating factors. In a similar vein, the "changed circumstances" described in the Commissioner's report may alter the sentencing court's perception concerning the presence or absence of mitigating factors. The offender's rehabilitative efforts while incarcerated may have made it unlikely that he will commit another offense, a mitigating factor set forth in *N.J.S.A.* 2C:44–1b(9), or may have made him particularly amenable to parole release treatment, a mitigating circumstance under *N.J.S.A.* 2C:44–1b(10). Of course, these examples do not exhaust the possibilities. The point to be stressed is that the decision of the Commissioner to file a motion for modification should trigger a reevaluation of aggravating and mitigating factors under current conditions, and the need to impose a period of parole ineligibility.

Our approach advances the Code's sentencing goals. Prior to enactment of the Code, the prevailing theme was that the sentence "should fit the offender as well as the offense." *State v. Ivan*, 33 *N.J.* 197, 200, 162 *A.*2d 851 (1960). This sentencing theory reflected a broader philosophical viewpoint that "retribution [was] not a favored thesis" and that "deterrence and rehabilitation" constituted the predominant sentenc-

ing goals. *Id.* at 199–200, 162 *A.*2d 851. It was said that "[i]f the offense [had] strong emotional roots or [was] an isolated event unassociated with a pressing public problem, there [was] room for greater emphasis upon the circumstances of the individual offender." *Id.* at 202, 162 *A.*2d 851. Where the crime was a calculated one or part of a widespread criminal skein, the needs of society were said to dictate that the "punishment more nearly fit the offense than the offender." *Ibid.* The sentencing judge was thus required to "deal with the complex of purposes, determining in each situation how the public interest [would] best be served." *Id.* at 201, 162 *A.*2d 851.

The Legislature eschewed this approach when it adopted the Code. The sentencing goals of rehabilitation and reformation of the offender became subordinate to a "just deserts" theory, which emphasizes structured sentencing and uniformity in punishment. *See, e.g., Fair and Certain Punishment, Report of the Twentieth Century Fund Task Force on Criminal Sentencing* at 3 (1976). This theme is reflected in the Code's sections providing aggravating and mitigating factors, presumptions of and against incarceration depending upon the degree of the crime, presumptive sentences within particular ranges, and appellate review. *See State v. Roth,* 95 *N.J.* 334, 361, 471 *A.*2d 370 (1984); *State v. Flores,* 228 *N.J.Super.* at 594, 550 *A.*2d 752. As we noted earlier in our opinion, this theory was also implemented in the Code's sections dealing with sex offender sentences. *State v. Chapman,* 95 *N.J.* at 591–92, 472 *A.*2d 559. The Code "recognizes that sex offenders, in addition to being treated for psychological problems, should be punished for their wrongful acts." *Id.* at 592, 472 *A.*2d 559. "Whereas the Sex Offender Act had focused exclusively on rehabilitative and treatment purposes of sentencing, the Code added a punitive component." *State v. Cruz,* 125 *N.J.* 550, 556, 593 *A.*2d 1169 (1991).

Requiring the sentencing court to reevaluate and balance aggravating and mitigating factors in light of "changed circum-

stances," as described in the Commissioner's report and recommendation, comports with the principal aims and goals of the Code. It provides convicted sex offenders with a strong incentive to avail themselves of the ADTC's treatment modalities while recognizing the need for general deterrence and punishment.

As we mentioned at the outset of our opinion, this is the first reported opinion dealing with these issues. Defense counsel was not permitted to attend the hearing on the Commissioner's motion. Although the Law Division judge alluded to aggravating and mitigating circumstances in the course of his oral opinion, he made no specific findings regarding how, if at all, the Commissioner's report and recommendation affected his weighing of the factors set forth in *N.J.S.A.* 2C:44–1a and b.

Accordingly, the order denying modification is reversed and the matter is remanded for further proceedings consistent with this opinion.