183 N.J. Super. 463 (1982)
444 A.2d 593
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
EUGENE FARR, DEFENDANT-RESPONDENT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
EUGENE FARR, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 23, 1982.
Decided March 17, 1982.
*465 Before Judges MICHELS, McELROY and J.H. COLEMAN.
Victoria Curtis Bramson, Deputy Attorney General, argued the cause for State of New Jersey (Irwin I. Kimmelman, Attorney General of New Jersey, attorney; James R. Zazzali and John J. Degnan, former Attorneys General of New Jersey, and John DeCicco, Assistant Attorney General, of counsel; Victoria Curtis Bramson on the brief).
Mark H. Friedman, Assistant Deputy Public Defender, argued the cause for Eugene Farr (Stanley C. Van Ness, Public Defender, attorney; Mark H. Friedman of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendant Eugene Farr was found guilty by a jury of armed robbery (N.J.S.A. 2C:15-1), unlawful possession of a shotgun without first having obtained the requisite firearms purchaser's identification card (N.J.S.A. 2C:39-5 c(2)) and possession of a shotgun with the purpose of using it unlawfully against another person (N.J.S.A. 2C:39-4 a). The trial judge merged defendant's conviction for unlawful possession of the shotgun into his conviction for armed robbery and sentenced him to State Prison for ten years for the armed robbery. That sentence was suspended and defendant was placed on probation for five years. *466 Defendant was also sentenced to probation for five years for the unlawful possession of a weapon with the intent of using it against another, which probationary term was to run concurrently with the probationary term imposed for armed robbery. As a condition of probation, defendant was to be confined to the Middlesex County Adult Correction Center for a period of 90 days with 48 days credit for the time served. Defendant was also fined $2,500, $1,500 of which was to be paid to the Violent Crimes Compensation Board over the first two years of probation. The State appealed from the sentences imposed, and defendant appealed from the judgments of conviction. We consolidated the appeals.
According to the State's proof, in the early hours of November 3, 1979 defendant and two other men were driving around the North Brunswick area. At about 4:30 a.m. David Linder, the driver of the automobile, pulled into the parking lot of an overnight convenience grocery store known as Krauszer's, located on Route 130 in North Brunswick. Linder and defendant donned masks and, carrying shotguns, robbed the store. April Casey, an 18-year-old college student at Douglas College, who was working part-time at Krauszer's, testified that the first man to enter the store wore a bandana over his nose and mouth and carried a shotgun. While she was not entirely certain as to his identity, she believed that she recognized this man as Linder. Linder had been in the store on prior occasions and, in fact, had been in the store twice during the early part of the evening. When Casey said to the masked man: "Are you kidding?", he merely gestured with his weapon towards the cash register. Casey, who was frightened, walked to the cash register. She then noticed another man wearing a green mask and also carrying a shotgun standing at the entrance to the store a few feet from the cash register. This man was defendant. Linder stood by the cash register and pointed the shotgun at Casey. Casey opened the cash register, removed the money from the top drawer and gave it to Linder. Linder then reached into the drawer beneath the register and removed the remaining money. *467 Linder tried to open the floor safe but was unsuccessful, and since Casey did not have the combination the safe could not be opened. During this entire time defendant stood in the doorway with a shotgun cradled in his arms. Defendant told Linder to "[h]urry up. Come on." The two men then left, taking approximately $150.
As soon as defendant and Linder left the store, Casey called the North Brunswick police and reported the holdup. Sergeant Probst of the North Brunswick Police Department, who was on patrol, responded to the call. While proceeding towards Krauszer's, he observed only one car which was heading in a northerly direction away from the store. He pulled into the left lane, slowed down and turned on his side floodlight which illuminated Linder's automobile as it passed by. Probst became suspicious, turned around and followed the Linder automobile, illuminating the interior thereof with his high beam headlights and top flood light. During the entire time that Probst followed the vehicle, none of the three occupants turned around or looked in the officer's direction. Probst thereupon called for a backup, and eventually pulled over the Linder automobile. When Probst saw Linder getting out of the automobile, he (Probst) immediately went over to Linder's vehicle. From this location, Probst could see the butt of a shotgun lying on the floor in the front of the car. Linder, defendant and Kevin Knox, the other occupant of the automobile, were told not to move. When the backup officer arrived, Probst told defendant and Knox to slide out of the automobile one at a time. After they were all out, Probst examined the interior of the automobile and found two shotguns. The shotgun on the floor in the front of the vehicle was loaded, the second, found on the floor behind the front seat, was unloaded. In addition, a "monster" mask was found on the floor near the front seat where defendant had been seated. A search of Linder's jacket revealed $149.10, as well as a note written by the Krauszer store manager, which had been wrapped around $5.10 and placed in the drawer beneath the cash register.
*468 Defendant was taken to the police station where, according to Detective Mazgai, defendant gave two different statements. In the latter he admitted that he "was the person at Krauszer's door." He denied, however, that he was there for the purpose of being a lookout. Rather, he claimed that Linder told him that "the holdup was a joke as he [Linder] knew the girl," and that Linder had shown him (defendant) that the gun was not loaded before he went in the store. At the conclusion of the proofs, defendant was convicted of all three offenses.

Defendant's Appeal
Defendant contends for the first time on this appeal that he was denied a fair trial because the prosecutor was permitted to cross-examine him and to comment during summation about the fact that he was unemployed and had substantial financial obligations on the date that the robbery was committed. The record reveals that defendant testified that he was employed on the date of the armed robbery and had been for 15 years. However, defendant stated that he left his job in order to find work closer to his home in North Jersey. Defendant also testified that he possessed funds on the date of the robbery and hence, had no motive for robbing the Krauszer store, as appears from the following excerpt from his direct examination:
Q. Gene, you heard testimony earlier from April Casey that you had a shotgun in your hand.
A. Yes, I had a shotgun in my hand. It doesn't make me an armed robber. I wasn't robbing the store. I had no intention to rob the store. Why in God's earth would I rob a store? I had two hundred dollars in my pocket. I was asking him to get out. I was worried somebody would come past. He had a gun in the store. He wasn't aiming the gun at her; he was holding it in one hand. I could see him. I couldn't see her very good. She was behind displays. He was in an open thing. He was standing there with a gun hanging at his side. He wasn't holding it with two hands at all when I saw it. He was just standing there. [Emphasis added]
While generally evidence of impecuniosity of a defendant should not be admitted and should not be commented upon (see State v. Mathis, 47 N.J. 455, 471-472 (1966); but cf. State v. Robinson, 139 N.J. Super. 58, 62-63 (App.Div. 1976), certif. den. 75 *469 N.J. 534 (1977); State v. Copeland, 94 N.J. Super. 196, 201-202 (App.Div. 1967)), the prosecutor's questioning of defendant as to his employment status and financial obligations and his comments during summation with respect thereto were not improper in this case. The prosecutor's cross-examination of defendant and his comments on these issues were in direct response to defendant's testimony that he was employed and had money on the date of the armed robbery and therefore had no motive to rob the Krauszer store. Once defendant placed this evidence before the jury, the State had the right to cross-examine him and refute his testimony concerning it. See State v. Knight, 63 N.J. 187, 192-193 (1973). Moreover, defendant's failure to object to this cross-examination or the prosecutor's summation on this issue indicates that he did not, in the context of the proofs, deem them prejudicial or improper. See State v. Thornton, 38 N.J. 380, 399 (1962), cert. den. 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963); State v. Plowden, 126 N.J. Super. 228, 232 (App.Div. 1974), certif. den. 64 N.J. 504 (1974). Consequently, we hold that the prosecutor's cross-examination and summation concerning defendant's employment status and financial resources and obligations did not constitute error, let alone plain error. R. 2:10-2; State v. Hock, 54 N.J. 526, 538 (1969), cert. den. 399 U.S. 930, 90 S.Ct. 2254, 26 L.Ed.2d 797 (1970).
Beyond this, in view of the overwhelming evidence of guilt, the "error" alleged by defendant did not reach dimensions "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Macon, 57 N.J. 325, 336 (1971).
Accordingly, defendant's convictions are affirmed.

Appeal by the State
The State appeals, as manifestly inappropriate, the probationary sentences imposed upon defendant for armed robbery and unlawful possession of a shotgun. The State's right to appeal is *470 purely statutory. State v. Watson, 183 N.J. Super. 481 (App. Div. 1982) (decided this day). This right is conferred by N.J.S.A. 2C:44-1 f(2), which provides:
In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted. If the court does impose sentence pursuant to this paragraph, or if the court imposes a non-custodial or probationary sentence upon conviction for a crime of the first or second degree, such sentence shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution.
Contrary to defendant's claim, this statute does not violate the double jeopardy clauses of the Federal and State Constitutions. In United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), the United States Supreme Court upheld 18 U.S.C.A. § 3576 of the Organized Crime Control Act, which grants to the government the right to appeal a sentence imposed on a "dangerous special offender" in an effort to have a harsher sentence imposed. The court held that this provision does not violate the guarantee against multiple punishment barred by the Double Jeopardy Clause of the Fifth Amendment. In light of this, we conclude that N.J.S.A. 2C:44-1 f(2) in itself is not unconstitutional as violative of the principles of double jeopardy.
However, notwithstanding this, we are of the view that defendant's constitutional guarantee against double punishment barred by the Double Jeopardy Clause would be violated if this appeal were to result in this court increasing his sentence. The record shows that after defendant's sentences were imposed on November 10, 1980 the State immediately sought a stay of execution of the sentences to permit it to appeal. The trial judge denied the State's motion and directed that defendant immediately commence serving the custodial portion of his sentences. On November 17, 1980 the State filed a timely appeal as *471 required by the provisions of N.J.S.A. 2C:44-1 f(2). However, it was not until December 15, 1980 that the State moved pursuant to R. 2:9-3(d)[1] for a stay of defendant's sentences pending appeal. By that time defendant had already served over a month of his 90 day custodial sentence in the Middlesex County Adult Correction Center. On December 23, 1980 we denied the State's application for a stay, and on December 24, 1980 defendant completed serving the entire custodial portion of his sentences.
We hold that jeopardy attached when defendant commenced serving his sentences. Consequently, we cannot interfere with those sentences without violating defendant's constitutional right to be free from double jeopardy as guaranteed by the United States and the New Jersey Constitutions. See State v. *472 Ryan, 86 N.J. 1 (1981), cert. den. ___ U.S. ___, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981), wherein our Supreme Court, commenting upon the double jeopardy protection against an increase in sentence after defendant has commenced serving such sentence, stated:
That the imposition of a custodial term after revocation of probation does not violate a defendant's double jeopardy rights is beyond question in view of the Supreme Court's recent flat statement to that effect in United States v. DiFrancesco, 449 U.S. 117, 138, 101 S.Ct. 426, 438, 66 L.Ed.2d 328, 346 (1980): [T]here is no double jeopardy protection against revocation of probation and the imposition of imprisonment." But that does not answer the question squarely presented here, not addressed by the New Jersey authorities cited above, and apparently left open by the Supreme Court in DiFrancesco, supra, namely, whether double jeopardy considerations militate against increasing the defendant's prison sentence after violation of probation when he has already served a portion of that custodial term. That feature of the case is central to Ryan's position. Simply stated the contention is that jeopardy attached as soon as defendant commenced serving his prison term, hence principles of double jeopardy foreclosed the imposition of any increased term after violation of probation. We agree.
III.
Out of respect for our dissenting colleague's view that "application of the reasoning and doctrine in DiFrancesco to the factual pattern of the instant case indicates an absence of a double jeopardy obstacle," post at 17, we first address that contention directly.
The Supreme Court in DiFrancesco held 18 U.S.C. § 3576, which authorizes the prosecutor to appeal the imposition of sentence on a defendant who qualified as a "dangerous special offender." It ruled that such an appeal does not violate the Double Jeopardy protection against double punishment. DiFrancesco, 449 U.S. at 138, 101 S.Ct. at 438, 66 L.Ed.2d at 347. That case is distinguishable from the present one.
The issue in DiFrancesco was stated in this fashion: "[o]ur task is to determine whether a criminal sentence, once pronounced, is to be accorded constitutional finality and conclusiveness similar to that which attached to a jury's verdict of acquittal." Id. at 132, 101 S.Ct. at 435, 66 L.Ed.2d at 343 (emphasis added). The instant case is concerned with whether a criminal sentence is entitled to finality once the defendant has begun to serve it. Our holding is that in the latter circumstances, jeopardy attaches once the defendant has commenced serving his prison term. [86 N.J. at 8-11].
Accordingly, the State's appeal is dismissed.
NOTES
[1] When the State moved for a stay of the sentences on December 15, 1980, R. 2:9-3(d) provided:

(d) Stay Following Appeal by the State. Notwithstanding paragraphs (b) and (c) of this rule, upon his or the State's application, the requirement that defendant comply with the term of a sentence may be stayed, in full or in part, pending appeal by the State pursuant to N.J.S.A. 2C:44-1f(2), except that where the conviction has been for a lower degree of crime and a custodial sentence has been imposed, the defendant shall commence service of the custodial sentence. Whether the sentence is custodial or non-custodial, bail pursuant to Rule 2:9-4 may be established as appropriate under the circumstances. [Emphasis supplied].
Following the decision in State v. Ryan, 86 N.J. 1 (1981), R. 2:9-3(d) was amended to prevent the dismissal of an appeal by virtue of the execution of a sentence by making a stay mandatory when the State appeals pursuant to N.J.S.A. 2C:44-1 f(2). See "Commentary to New Rule Amendments," 108 N.J.L.J. 153, 163 (1981). The amended rule, which became effective on September 14, 1981, reads:
(d) Stay Following Appeal by the State. Notwithstanding paragraphs (b) and (c) of this rule, execution of sentence shall be stayed pending appeal by the State pursuant to N.J.S.A. 2C:44-1f(2). Whether the sentence is custodial or non-custodial, bail pursuant to Rule 2:9-4 shall be established as appropriate under the circumstances. A defendant may elect to execute a sentence stayed by the State's appeal but such election shall constitute a waiver of his right to challenge any sentence increase on grounds that execution has commenced. [Emphasis supplied].