188 N.J. Super. 201 (1983)
457 A.2d 37
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOSEPH W. JONES, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1982.
Decided February 8, 1983.
*204 Before Judges MATTHEWS, ANTELL and FRANCIS.
Stefanie Leibovitz, Assistant Prosecutor of Camden County, argued the cause for appellant (John B. Mariano, Camden County Prosecutor, attorney).
Mark H. Friedman, Assistant Deputy Public Defender, argued the cause for respondent (Joseph H. Rodriguez, Public Defender of New Jersey, attorney).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
A Camden County grand jury indicted Joseph W. Jones for second degree robbery. He was tried without a jury by Judge Talbott, who found him guilty. On July 6, 1981 Judge Talbott sentenced him to two years of probation, conditioned upon his obtaining a G.E.D. and maintaining employment. He was also fined $200.
Defendant argues that the State's appeal and any increase in his sentence are barred by the double jeopardy provisions of the United States Constitution, Amend. V, and the New Jersey Constitution (1947), Art. I, par. 11.
The State's appeal from a probationary sentence imposed upon defendant's conviction for a second degree crime is authorized by N.J.S.A. 2C:44-1 f(2), which provides:
(2) In cases of convictions for crimes of the first or second degree where the court is clearly convinced that the mitigating factors substantially outweigh the aggravating factors and where the interest of justice demands, the court may sentence the defendant to a term appropriate to a crime of one degree lower than that of the crime for which he was convicted. If the court does impose sentence pursuant to this paragraph, or if the court imposes a non-custodial or probationary sentence upon conviction for a crime of the first or second degree, such sentence shall not become final for 10 days in order to permit the appeal of such sentence by the prosecution.
The double jeopardy provisions of the Federal and New Jersey Constitutions have been construed to shield defendants from multiple punishments for the same offense and multiple *205 prosecutions. See, e.g., United States v. Wilson, 420 U.S. 332, 343, 95 S.Ct. 1013, 1021-1022, 43 L.Ed.2d 232 (1975); North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); Ex parte Lange, 85 U.S. 163, 21 L.Ed. 872 (1874); State v. Ryan, 86 N.J. 1, 10 (1979), cert. den. 454 U.S. 880, 102 S.Ct. 363, 70 L.Ed.2d 190 (1981). This protection has usually been invoked by courts when multiple punishments were imposed by the original sentencing court, see, e.g., State v. Williams, 167 N.J. Super. 203, 206 (App.Div. 1979), aff'd 81 N.J. 498 (1980), this because the common law history of double jeopardy protection reveals that it was not directed against appeals by the government. United States v. Wilson, 420 U.S. at 342, 95 S.Ct. at 1021.
The United States Supreme Court, in United States v. DiFrancesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), upheld 18 U.S.C.A. § 3576, which permits federal prosecutors to appeal sentences imposed upon "dangerous special offenders" under specified circumstances. 449 U.S. at 143, 101 S.Ct. at 440. Since criminal sentences should not be accorded as much "constitutional finality" as acquittals, the court concluded that "the Government's taking a review of respondent's sentence does not in itself offend double jeopardy principles just because its success might deprive respondent of the benefit of a more lenient sentence." 449 U.S. at 132, 101 S.Ct. at 434.
While our courts are free to construe corresponding state constitutional provisions more expansively than the United States Supreme Court has construed the Fifth Amendment's double jeopardy provision, cf. State v. Johnson, 68 N.J. 349, 353 (1975) (construing constitutional protections against unlawful search and seizure), there would be no precedent for a holding that an appeal brought pursuant to N.J.S.A. 2C:44-1 f(2) violates N.J. Const. (1947), Art. I, par. 11. New Jersey's double *206 jeopardy provision is significantly narrower than that contained in the United States Constitution.[1]
Although the New Jersey Supreme Court has not yet had to determine the constitutionality of N.J.S.A. 2C:44-1 f(2), this court, citing DiFrancesco, has upheld the provision as not violative of the protection against double jeopardy. State v. Farr, 183 N.J. Super. 463, 470 (App.Div. 1982) (appeal nevertheless dismissed because jeopardy had already attached before State filed appeal); accord State v. Watson, 183 N.J. Super. 481, 483-484 (App.Div. 1982).
While a sentence is not accorded complete finality when it is imposed, it does become a double jeopardy obstacle once a defendant has served part of it. State v. Ryan, 86 N.J. at 9-10 (distinguishing DiFrancesco from case of defendant whose sentence was increased after he had begun serving prison term). It is settled that jeopardy attaches as soon as the execution of a sentence has begun. State v. Laird, 25 N.J. 298, 306-307 (1957). In Farr and Watson the Appellate Division dismissed appeals taken by the State under N.J.S.A. 2C:44-1 f(2) because the defendants had already begun serving their probationary sentences before the State filed notices of appeal. Since jeopardy had attached, any increase in sentence would have violated the defendants' jeopardy rights under the Constitutions of the United States and New Jersey.
In this case jeopardy had not attached before the prosecutor filed notice of appeal. The execution of defendant's sentence had been stayed, pursuant to R. 2:9-3(d), two days *207 after his conviction, and the appeal was filed while the stay was still in effect.
Defendant did, however, serve part of his probationary sentence before the appeal was perfected, since the sentence was reinstated and the stay set aside on September 1, 1981, until the stay of sentence was restored on September 30. We are informed by the State, however, that the order of September 1, 1981 was procured ex parte by defendant, and that the State was not informed of the existence of that order until later when it immediately applied to Judge Talbott to reinstate the stay on September 30, 1981. Under those circumstances, defendant's probationary term would not have commenced for jeopardy purposes. See N.J.S.A. 2C:1-12(b). In State v. Sims, 65 N.J. 359, 370 (1979), the Supreme Court commented that, even if there had been a valid double jeopardy objection to the State's appeal from an order for a new trial, defendant had waived his right to assert it by requesting a new trial.
R. 2:9-3(d) was amended less than two months after the State filed its notice of appeal in this case. Although the amended rule cannot apply retroactively, we note that the amended version of the rule makes stay of execution of sentence mandatory pending appeal by the State pursuant to N.J.S.A. 2C:44-1 f(2). It also provides that a defendant's election to have the stayed sentence executed will constitute waiver of his right to challenge an increased sentence on double jeopardy grounds.
Defendant also contends that the absence of explicit statutory criteria for reviewing the sentence denies him due process of law, and that the appeal should be barred by principles of fundamental fairness.
Appellate review of a sentence that the prosecution has challenged as too lenient must be exercised with considerable restraint. It is apparent that a defendant's right to procedural fairness could easily be violated if the reviewing court might freely substitute its judgment for that of the original sentencing judge. We are satisfied, however, the appeal and review process *208 is constitutional if N.J.S.A. 2C:44-1 f(2) is read to include the prevailing careful standard of appellate review used when sentences have been challenged as excessive. See State v. Whitaker, 79 N.J. 503, 512-514 (1979); State v. Leggeadrini, 75 N.J. 150, 161-162 (1977); Sutherland, Statutory Construction, §§ 47.38, 50.01 (1973). This court has applied the Whitaker standard to its review of a resentencing panel's decision, made pursuant to N.J.S.A. 2C:1-1 d(2), which does not specify criteria for review of sentences previously imposed. See, e.g., State v. Stypulkowski, 176 N.J. Super. 524, 528 (App.Div. 1980). N.J.S.A. 2C:44-1 f(2) should also be applied as if it includes an implied standard of review, permitting sentence modification only upon a clear showing of abuse of discretion and a clear and compelling finding of resulting miscarriage of justice. Under that standard the appeal procedure cannot violate defendant's right to due process of law or result in fundamental unfairness.
The State contends that defendant's crime carried a presumption of incarceration at the time of sentencing.[2]
An amendment to N.J.S.A. 2C:44-1 d that became effective in September 1981 does provide for a presumption of imprisonment for all first and second degree crimes. N.J.S.A. 2C:44-1 d (L. 1981, c. 290, § 40). At the time of defendant's sentencing in July 1981, however, this provision read:
d. Presumption of imprisonment. Where a statute defining a crime of the first or second degree provides that a presumption of imprisonment shall be applied upon conviction or where a statute outside the code defining an offense which would be a crime of the first or second degree under the code provides for a mandatory sentence, a presumption of imprisonment shall apply. The court shall deal with a person who has been convicted of such a crime by imposing a sentence of imprisonment unless, having regard to the character and condition of the defendant, it is of the opinion that his imprisonment would be a serious injustice which overrides the need to deter such conduct by others.
It is the State's position that the amendment merely clarified, but did not change the prior law. This contention is supported *209 by the Statement to Senate Subcommittee Substitute for Senate 1537 (January 2, 1981), which explained that the proposed amendment "clarifies that the code does set a presumption of imprisonment for crimes of the first or second degree." There is also some common law support for an argument that the amendment evidenced the intent of the original provision. See Moore v. Harris, 623 F.2d 908 (4 Cir.1980); Wood v. Wood, 160 N.J. Super. 597, 602 (App.Div. 1978); Matawan v. Monmouth Cty. Tax Bd., 51 N.J. 291, 299 (1968).
In light of the language of the original provision and additional explanations in the Commentary,[3] we reject the State's construction of the provision. Cf. State v. Maguire, 84 N.J. 508, 528 (1980) (court to enforce statute according to its terms when language is clear); Sutherland at § 48.09 (report of commission to codify law to be accorded more weight than reports of legislative committee).
In this case, since defendant's offense was not one "other than a crime of the first or second degree," it did not carry the presumption of nonimprisonment provided in N.J.S.A. 2C:44-1 e. However, since N.J.S.A. 2C:15-1, which defined second degree burglary, did not provide for a presumption of imprisonment and no other statute made incarceration mandatory for defendant's offense, there was also no presumption of imprisonment when he was sentenced. See N.J.S.A. 2C:44-1 d. The alternatives enumerated in N.J.S.A. 2C:43-2 b were equally available to the sentencing judge.
It is obvious from the Commentary that the Commission did not favor sentences of mandatory incarceration and strongly preferred to permit judges to exercise broad discretion in sentencing. The inference that a presumption of imprisonment under the original subsection (d) would apply only to exceptional categories of crime, not to all crimes above third degree, may *210 reasonably be drawn. The original version of N.J.S.A. 2C:44-1 d was apparently intended to permit expansion of this exceptional category. The Commission explained that in subsection (d) it had "provide[d] a vehicle for the Legislature to express to the sentencing court the view that, in general, imprisonment should follow upon the conviction of every offender who violates certain statutes." Commentary at 326. Instead of taking advantage of this "vehicle" by amending the definition of only selected crimes to make them carry the presumption, the Legislature chose to amend subsection (d) itself to make the presumption apply broadly to the entire class of first and second degree crimes. Since the amendment seems contrary to the original intent of the Commission, it should not be applied retroactively or used to construe the prior version of subsection (d).
In any event, even if the presumption of imprisonment did apply, the sentencing judge had authority to impose a lesser sentence if she believed that mitigating circumstances warranted it. Thus, the sentence here imposed can be upheld even if we adopt the State's construction of the provision.
The State finally contends that Judge Talbott made inadequate findings and abused her discretion in sentencing defendant. We find no merit in this argument.
The State makes the following related arguments:
1. In arriving at defendant's sentence, the trial court did not adequately state on the record the reasons and factual basis for imposing the sentence, nor did the court properly weigh the aggravating and mitigating circumstances;
2. The trial court's amplification statement of reasons for sentence conflicts in material respects with the testimony elicited and the court's findings at trial, and is therefore an inadequate basis for sentence;
3. The fact that defendant was sentenced late in the day should not influence the nature of his sentence, and
4. The aggravating factors outweigh the mitigating circumstances in this case.
We find in the record that Judge Talbott's factual findings were adequate when both the original and amplification statements are considered, and that she did not mistakenly exercise her discretion by giving substantial weight to mitigating factors. *211 Her original statement of reasons cites as mitigating factors defendant's four-year work history at a single job and his "doing pretty we[l]l," i.e., absence of adult criminal record, until the present offense, and notes that his high school education is incomplete. Although not detailed, her findings were sufficiently specific. See State v. Sanducci, 150 N.J. Super. 400, 403 (App.Div. 1977), certif. den. 75 N.J. 524 (1977). See N.J.S.A. 2C:44-1 b(7), (9), (10).
Her additional findings in the amplification statement provide a detailed basis for appellate review. For example, she noted that defendant had been law-abiding since his release from Jamesburg until he committed the present offense; that he had a stable work history, and that his probation officer had concluded that he would respond well to probationary treatment, particularly vocational counseling and adult education. She also gave detailed reasons for concluding that defendant may have been influenced by Michael Taylor, whom she considered the probable "primary actor" in the robbery. See N.J.S.A. 2C:44-1 b(13). Her firsthand evaluation of defendant's character and potential for rehabilitation should be accorded considerable deference. State v. Leggeadrini, 75 N.J. at 162.
During sentencing Judge Talbott told defendant, "If it wasn't so late I'd issue work release. I'm not going to have you sitting in the Camden County Jail." Her amplification statement, however, makes it clear that the time of day did not significantly influence her decision to impose a probationary sentence. She adequately explained that she had referred to work release to let defendant know that she had seriously considered it as an alternative to probation. Since defendant already had a home and a steady job, a probationary sentence, conditioned upon his continued employment, economically serves the rehabilitative purposes of a work-release program without adding unnecessarily to the crowding of the county jail at night. We do not regard Judge Talbott's casual reference to work release during sentencing as making her final decision less proper.
*212 Regardless of whether we agree with Judge Talbott's allocation of weight to the various aggravating and mitigating circumstances in this case or with her "willing[ness] to take carefully considered risks with some defendants that lead to their rehabilitation," it is obvious that the probationary sentence she imposed was carefully thought out, based on adequate factual findings, and, accordingly, not a mistaken exercise of discretion.
Affirmed.
NOTES
[1] Our Supreme Court commented that, while New Jersey's double jeopardy provision is narrower than most states, New Jersey does accept the "full sweep" of the common law doctrine. State v. Currie, 41 N.J. 531, 536 (1964). A few years later it characterized the New Jersey and federal provisions as coextensive in the scope of their protection, so that the views of the United States Supreme Court regarding double jeopardy issues should be influential, though not dispositive, in state cases. State v. Farmer, 48 N.J. 145, 168 (1966), cert. den. 386 U.S. 991, 87 S.Ct. 1305, 18 L.Ed.2d 335 (1967).
[2] The trial judge also believed that defendant's crime carried this presumption.
[3] Volume II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission, October 1971, at 326.