189 N.J. Super. 220 (1983)
459 A.2d 1189
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH A. GIORGIANNI, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 22, 1983.
Decided April 21, 1983.
*222 Before Judges MATTHEWS, ANTELL and FRANCIS.
Fletcher N. Baldwin, Jr., a member of the Georgia Bar, admitted pro hac vice, argued the cause for appellant (Wherry & Yostembski, attorneys; E. John Wherry, Jr., on the brief).
Allan J. Nodes, Deputy Attorney General, and Hal K. Haveson, Assistant Prosecutor, argued the cause for respondent (Irwin I. Kimmelman, Attorney General of New Jersey, and Philip S. Carchman, Prosecutor of Mercer County, attorneys; Allan J. Nodes and Debra L. Stone, Deputy Attorney General, on the brief).
PER CURIAM.
This is an appeal from an order entered in the Law Division, Mercer County, ordering reinstatement of the sentence originally imposed upon defendant after convictions for carnal abuse and debauching the morals of a minor.
On November 7, 1980 defendant was sentenced to a term of 15 years in the New Jersey State Prison pursuant to his conviction for carnal abuse in violation of N.J.S.A. 2A:138-1, with a three-year term for violation of N.J.S.A. 2A:96-3, debauching the morals of a minor, to run concurrently with the longer sentence. On December 16, 1980 defendant filed a notice of appeal from both the conviction and the sentence.
We affirmed the conviction but vacated the sentence for failure to provide defendant with a copy of a diagnostic report and an opportunity to comment on it, and the case was remanded for resentencing.
On remand for resentencing, on July 29, 1982 the Law Division judge reimposed the 15-year term. Defendant's medical history was brought up at the resentencing hearing and the judge read medical reports submitted by defendant and the prosecutor. He noted reports from Dr. Lecks, defendant's treating physician for a number of years, who was of the opinion that defendant's condition was adversely affected by his obesity and *223 emotional state, and that he might become completely incapacitated if subjected to enough stress; from Dr. DeGoma and from Dr. Krosnick. The State submitted reports by Dr. De Sandre and Dr. Winant.
Judge Barlow found at the July 29, 1982 hearing that there was not a sufficient showing that incarceration was not a viable alternative. In reimposing the original sentence he also weighed the gravity and seriousness of the offense against the danger of incarcerating someone in defendant's condition, as directed by State v. Tumminello, 70 N.J. 187 (1976).
Because of Dr. Lecks' opinion, Judge Barlow asked the Superintendent of the Youth Reception and Correction Center, Yardville, to have defendant examined and to report to him as to whether defendant could receive proper medical care while incarcerated and whether incarceration could be life-threatening. He received a memorandum dated August 4, 1982, in which Dr. Valenzuela stated that, due to defendant's physical condition, incarceration could jeopardize his life.
As a result, Judge Barlow held a R. 3:21-10(b)(2) hearing on August 6, 1982. According to respondent's brief, the judge specifically stated at that time that he was holding a "Tumminello" hearing. Dr. Valenzuela testified at this hearing to the effect that, although the hospital at Yardville could accommodate defendant, he did not know of any prison that could care for defendant outside of the hospital setting. At the termination of the August 6, 1982 hearing, Judge Barlow vacated the sentence imposed on July 29, 1982 and amended defendant's sentence to make it a three-year probationary term.
On August 13, 1982 the State filed a notice of appeal from the order vacating defendant's sentence under N.J.S.A. 2C:44-1(f).
On August 16, 1982 the State filed a notice of motion for a stay pending appeal and an order readmitting defendant to bail, which was granted on August 23, 1982.
On August 23, 1982 the State filed an amended notice of appeal from the order of August 6, 1982, along with a notice of *224 motion for leave to appeal the interlocutory order entered by Judge Barlow on August 6, 1982, which had vacated defendant's original sentence in favor of a probationary sentence and a fine. The State also filed a motion for reconsideration of sentence by the trial court on the same date.
On the following day the State moved for acceleration of the rehearing by the Law Division. The hearing was accelerated from September 17 to August 31, 1982.
At that hearing the State produced testimony from Veronica Meszaros, an investigator for the Division of Gaming Enforcement, who saw defendant at a blackjack table in the Sands Casino in April. He was apparently without any medical paraphernalia and was not having difficulty breathing. Barbara Cerne, a sportswriter, testified that she had seen defendant at a prize fight at the Sands Hotel on June 23, 1982, walking on his own and apparently not in physical distress.
The State also called Dr. John Winant who had testified at the first resentencing hearing. Dr. Winant testified that, in his opinion, defendant had exaggerated his symptoms when examined and really did not have a severe case of asthma. Dr. Winant was of the opinion that, with proper facilities and medication, incarceration should not be dangerous to defendant's health. He also felt that all of defendant's physical problems would improve with weight loss.
The State also introduced testimony from: George Saxton, Chief Consultant Psychologist at Trenton State Prison, who stated that 24-hour psychological care could be provided to help defendant deal with the stress of the situation; Alan Koenigsfest, Health Services Coordinator for the Department of Corrections, who testified that the prison system could handle defendant through utilizing the medical staff for routine care and hospitalization for major problems, and Gary J. Hilton, Assistant Commissioner for Adult Institutions, who testified that any special facilities and care required by defendant could be provided.
*225 Defendant called Simone McCarty, a nurse at Yardville, who described the care defendant had received when at Yardville.
On September 1, 1982 Judge Barlow reimposed the 15-year sentence.
Defendant argues that the reimposition of the 15-year custodial sentence following rehearing by the trial judge violated his Fifth Amendment guarantee against double jeopardy as applied to the states by the Fourteenth Amendment. He contends that, since he was lawfully resentenced on August 6, 1982 and commenced service of that probationary term, the reimposition of the higher original sentence violated double jeopardy.
The hearing of August 6, 1982, as a result of which defendant's sentence was reduced, was held based on the authority granted by R. 3:21-10(b)(2), under which "(a) motion may be filed and an order may be entered at any time ... amending a custodial sentence to permit the release of a defendant because of illness or infirmity of the defendant...." The State appealed from the newly imposed probationary term pursuant to the right of appeal granted in N.J.S.A. 2C:44-1 f(2), which permits the State to appeal if it acts within ten days. Judge Barlow then used R. 3:21-10(d), which allows a trial judge to "reconsider a sentence pursuant to this Rule during the pendency of an appeal upon notice to the Appellate Division."
Defendant argues that an increase in a sentence which a defendant has already begun to serve violates the double jeopardy clause, Ex Parte Lange, 85 U.S. 163, 18 Wall. 163, 21 L.Ed. 872 (1883), and that this State has also held "that where a valid sentence has been put into execution, the trial court cannot modify, amend, or revise it in any way, either during or after the term or session of the court at which the sentence was pronounced." State v. Laird, 25 N.J. 298, 306-307 (1957). He urges that a rule which allows a trial judge to increase a sentence previously imposed may create serious problems in light of the constitutional right to be free from double jeopardy. State v. Matlack, 49 N.J. 491, 501 (1967), cert. den. 389 U.S. 1009, *226 88 S.Ct. 572, 19 L.Ed.2d 606 (1967), and that in order to avoid double jeopardy problems, R. 3:21-10 must be read as intended to benefit only defendants.
We disagree. R. 3:21-10(b) was utilized in favor of defendant in the first instance, since it was under that section that the original reduction in sentence was granted. R. 3:21-10(d) allows the trial court to reconsider its sentence pending appeal. There does not appear to be any indication that this rule was intended to apply solely to aid defendants, since it simply states that it applies pending appeal and the right of the prosecution to appeal from a reduced sentence is guaranteed by N.J.S.A. 2C:44-1 f(2).
The language in State v. Laird, 25 N.J. at 307, which defendant cites as supporting his theory that R. 3:21-10 was intended to apply to the one situation wherein a defendant is appealing a sentence, is inapplicable. It refers to the predecessor to R. 3:21-10(b), which provided that a judge "may reduce or change" a sentence. That section was interpreted as allowing a judge to lessen a penalty, not to increase one. Id. Not only does the change in the present rule, R. 3:21-10(b), which permits "changing" or "amending" a sentence and eliminates the word "reduce," cast some doubt on the validity of this interpretation, but also R. 3:21-10(d) is now a separate subsection which makes no reference to the type of change to be made on rehearing. Moreover, since the State is specifically allowed to appeal from a sentence by statute, there does not appear to be any overriding state policy to the effect that only a defendant should have the benefit of reconsideration of sentence pending appeal.
Defendant bases his argument on his belief that any increase in a sentence violates double jeopardy. However, in United States v. Di Francesco, 449 U.S. 117, 132, 101 S.Ct. 426, 434-35, 66 L.Ed.2d 328 (1980), the Supreme Court stated that a government appeal from a sentence does not violate the double jeopardy clause simply because it might deprive a defendant of a more lenient sentence, so long as the government's appeal does not *227 present a threat of multiple prosecutions or multiple punishments. In Di Francesco the court held that a statute permitting the imposition of a greater sentence on a defendant classified as a "dangerous special offender" did not create double jeopardy, id. at 143, 101 S.Ct. at 440-41. The rationale was that sentencing "has never carried the finality that attached to an acquittal." Id. at 133, 101 S.Ct. at 435. It is established practice in the federal system to allow the trial judge to recall a defendant and increase his sentence provided he has not yet begun to serve it, id at 134, 101 S.Ct. at 435-36. Under the statute there under review, defendant was charged with knowledge of the statute's appeal provisions, and had no expectation of finality of the sentence until the time for appeal had expired, id. at 136, 101 S.Ct. at 437. In such a situation, the expectations of the defendant were no more defeated than those of a defendant who is placed on parole and whose parole is subsequently revoked, id. at 137, 101 S.Ct. at 437.
Furthermore, the court found no danger of multiple punishment unless the defendant received a greater punishment than provided by statute. Id. at 139, 101 S.Ct. at 438. The court distinguished the holding of Ex Parte Lange, 85 U.S. 163 (1863), on its facts, since in Lange defendant had been sentenced to imprisonment after his fine had been paid, although the statute under which he was sentenced allowed a fine or imprisonment. The court limited Lange's holding to that specific context, 449 U.S. at 139, 101 S.Ct. at 438. The argument that a sentence becomes final when the defendant begins to serve it has no force when the sentence is subject to appeal, since the defendant has no expectation of finality. Id. at 139, 101 S.Ct. at 438.
N.J.S.A. 2C:44-1f(2), which permits the State to appeal from a probationary sentence, does not violate the prohibition against double jeopardy. A defendant can be charged with notice of the statute that permits the prosecution to appeal within ten days and thus has no expectation of finality in his sentence until after that period ends.
*228 The relationship of this statute to the double jeopardy clause has been considered by this court in three cases. In State v. Watson, 183 N.J. Super. 481, 482-483 (App.Div. 1982), the State appealed the imposition of a probationary sentence on the ground that it constituted an abuse of discretion. The ultimate holding of the court was that it lacked jurisdiction over the matter because the right of the State to appeal from a sentence is purely statutory and the appeal was not filed within the statutory limit of time, id. at 484. Since defendant began to serve his sentences before the notice of appeal was filed, the sentences became final, id. If the court did not dismiss the appeal, double jeopardy would be violated, id. at 484.
In State v. Farr, 183 N.J. Super. 463, 470 (App.Div. 1982), this court relied upon United States v. Di Francesco, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980), in order to uphold N.J.S.A. 2C:44-1 f(2) against an attack on double jeopardy grounds. The appeal of defendant's sentence by the State, however, was dismissed. The State, although it filed its notice of appeal within ten days, did not apply for a stay until after the ten-day period had expired. Id. 183 N.J. Super. at 470-471. Jeopardy attached when defendant began serving his sentence without the filing of a timely notice to stay the sentence before it became final and the appeal was barred, id.
More recently, in State v. Jones, 188 N.J. Super. 201 (App.Div. 1983), we again upheld the validity of N.J.S.A. 2C:44-1 f(2) in the course of affirming a sentence of probation challenged by the State.
The facts in the present case are distinguishable from those in Watson and Farr. Both the appeal and the notice of motion for a stay of sentence pending appeal were filed within ten days of the "Tumminello" hearing of August 6, 1982. Although the stay was not actually granted until August 23, 1982, defendant can be charged with notice that his sentence was not final by the filing of an appeal and a R. 2:9-3(d) stay within the time allowed. Thus, as stated in Di Francesco, no double jeopardy *229 results from increasing a sentence within the statutory limit because the defendant had no expectation of finality in the sentence, United States v. Di Francesco, 449 U.S. at 137-138, 101 S.Ct. at 438.
The State also urges the court to uphold the rehearing of the "Tumminello" hearing by reading R. 3:21-10(b)(2) to permit such a hearing to be convened at any time. The State's brief points out that while the other sections of R. 3:21-10(b) provide for "changing a custodial sentence," R. 3:21-10(b)(2) provides for "amending a custodial sentence to permit the release of a defendant because of illness or infirmity...." The State contends that this means the sentence is not really reduced but that release is permitted with the court retaining jurisdiction to entertain a new motion. State v. Sanducci, 167 N.J. Super. 503 (App.Div. 1979), certif. den. 82 N.J. 263 (1979), supports this proposition. There, Judge Michels stated:
The trial court is empowered by R. 3:21-10(b)(2) to amend a custodial sentence to permit the release of a defendant because of illness or infirmity. It does not, however, authorize a reduction of a defendant's sentence for these reasons without the concurrence of the prosecutor. [167 N.J. Super. at 511]
Thus, amendment of a sentence pursuant to R. 3:21-10(b)(2) does not actually affect the sentence as originally imposed, but simply permits release of a defendant because of his physical condition at that time. Under that reading, reimposition of the original sentence is not the imposition of a greater sentence in violation of double jeopardy, but rather the reactivation of an existing sentence. It is similar to reimposition of an original sentence on reversal of a judgment of resentence under N.J.S.A. 2C:1-1(d)(2) after an appeal by the State, which also has the effect of continuing in effect a defendant's prior sentence and does not constitute double punishment as barred by double jeopardy. State v. Johnson, 176 N.J. Super. 1, 7 (App.Div. 1980), aff'd 88 N.J. 26 (1981).
Assuming that an amendment of a sentence under R. 3:21-10(b)(2) to permit the release of a defendant does not destroy the original sentence and replace it with another, the judge's *230 statement that he "vacated" the original sentence should not change the result. "`The Constitution does not require that sentencing should be a game in which a wrong move by the judge means immunity for the prisoner.'" United States v. Di Francesco, 449 U.S. at 134, 101 S.Ct. at 436, quoting Bozza v. United States, 330 U.S. 160, 166-167, 67 S.Ct. 645, 648-49, 91 L.Ed. 818 (1947).
Defendant's second contention is that the order to accelerate the State's motion for reconsideration of sentence, which gave defendant's attorney five days to prepare his case instead of the usual 14 days allowed by R. 1:6-3, denied him due process and the effective assistance of counsel as required by both the State and federal constitutions. He claims that complex legal and factual issues were presented at the hearing and that counsel did not have adequate time to prepare a defense.
The right to assistance of counsel in criminal prosecutions is guaranteed by the Sixth Amendment of the United States Constitution and by Art. I, par. 10 of the New Jersey Constitution of 1947. State v. Sugar, 84 N.J. 1, 15-16 (1980). Counsel must be effective as well as available, and the circumstances must not be such that the attorney is prevented from making effective preparations. Id. at 17; Powell v. Alabama, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932). Sentencing and resentencing hearings as they exist under the New Jersey rules are crucial stages of a trial for which counsel must be available. Tully v. Scheu, 607 F.2d 31, 35-36 (3 Cir.1979).
Defendant argues that the criteria to be considered in determining whether a criminal defendant has been deprived of effective assistance of counsel set forth in United States v. Golub, 638 F.2d 185, 189 (10 Cir.1980), require reversal of the sentence. They include:
(1) the time afforded for investigation and preparation; (2) the experience of counsel; (3) the gravity of the charge; (4) the complexity of possible defenses; and (5) the accessibility of witnesses to counsel. [Id., citing Wolfs v. Britton, 509 F.2d 304 (8 Cir.1975)]
Defendant basically argues that he had insufficient time for preparation in light of the gravity of the issues.
*231 We find that Judge Barlow's decision that defendant had sufficient time to prepare was reasonable. Dr. Winant had submitted a report for the prosecution at the hearing of July 29, 1982, at which defendant was sentenced. The State gave defense counsel a list of all its witnesses a week before the hearing, and provided counsel with affidavits detailing the testimony of Gary Hilton and Alan Koenigfest before the hearing. The additional issues presented by the witnesses who saw defendant in Atlantic City were certainly not complex.
Most importantly, the issues at this hearing were the same as those raised at the earlier "Tumminello" hearing and at the original sentencing proceeding. Defendant's counsel had sufficient time to prepare effectively.
Affirmed.