819 A.2d 497 (2003)
359 N.J. Super. 241
STATE of New Jersey, Plaintiff-Respondent,
v.
Rolando TERRELL, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 26, 2003.
Decided April 10, 2003.
*498 Yvonne Smith Segars, Public Defender, attorney for appellant (Abby P. Schwartz, Assistant Deputy Public Defender, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, attorney for respondent (Edward Werner, Deputy Attorney General, of counsel and on the brief).
Before Judges KESTIN, FALL and WEISSBARD.
The opinion of the court was delivered by KESTIN, P.J.A.D.
Defendant was charged with six third-degree crimes relating to controlled dangerous substances. Three involved cocaine, and three involved heroin. They were, with respect to each substance: possession, possession with intent to distribute, and possession within 1,000 feet of a school with intent to distribute.
The charges were tried to a jury, which acquitted defendant of the school zone offenses and convicted him on the remaining four charges. After mergers were effected, defendant was sentenced, on February 9, 2001, to two concurrent four-year prison terms with 188 days of jail credit. The customary assessments, penalties and fines were ordered. Defendant's driver's license was suspended for twelve months.
On appeal, defendant raises the following issues:
POINT I THE PROSECUTOR'S INTRODUCTION INTO EVIDENCE OF THE DEFENDANT'S LACK OF EMPLOYMENT AND HER COMMENT IN SUMMATION WHICH INFERRED THAT THIS GAVE THE DEFENDANT A MOTIVE TO COMMIT THE CRIME, DENIED THE DEFENDANT HIS STATE AND FEDERAL CONSTITUTIONAL
RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL. (U.S. CONST. AMENDS. V, VI AND XIV; N.J. CONST. (1947), ART. I, PARS. 1, 9 AND 10) (Partially Raised Below).
POINT II THE HIGHLY PREJUDICIAL REMARK BY DETECTIVE MARTINEZ, TO WHICH THE TRIAL COURT SUSTAINED DEFENDANT'S OBJECTION BUT FAILED TO DELIVER A CURATIVE JURY INSTRUCTION, VIOLATED DEFENDANT'S DUE PROCESS RIGHT TO A FAIR TRIAL. (U.S. CONST. AMEND. XIV; N.J. CONST. (1947), ART. I, PAR. 1). *499 Because of unremediated prejudice in the evidence as presented to the jury, we reverse the two convictions for possession with intent to distribute. Because the evidence to which we refer did not bear upon the simple possession charges, we affirm as to those convictions.
The drugs and $965 in cash were discovered on defendant's person when he was searched incident to an arrest on a warrant. At the commencement of trial, before the jury was empanelled, defendant moved to suppress that evidence. An evidentiary hearing was held, and the trial judge determined that both the arrest and the search had been valid. Accordingly, he denied the motion to suppress.
The next day, the officer who had executed the warrant, Detective Nicholas Martinez of the East Orange Police Department, testified before the jury. He began, naturally, by establishing the circumstances. At the court's express behest after defense counsel had alerted a problem, the detective had been instructed by the assistant prosecutor assigned to the case to avoid mentioning in his testimony any particulars of the arrest warrant. Nevertheless, the detective testified that, as part of his duties, he was assigned to the F.B.I. Violent Crimes Fugitive Task Force and that one of his functions was to receive requests for assistance from "local detectives" for locating "an individual who's wanted for a violent crime[.]" Defense counsel objected, and, in a sidebar conference, the trial court, invoking N.J.R.E. 403, ruled that the use of the term "violent crime" was prejudicial to defendant with no offsetting probative value. The judge stated:
... I will accept the objection.... I would only highlight [the response to the last question] if I told the jury to disregard that nature of it. But at this time, ... I will instruct you not to ... ask the question and have him respond... where he uses the [term] violence... in regard ... to his previous arrest warrant.

* * *
... I don't want him to refer to violent crimes anymore.
Defense counsel, apparently agreeing as a tactical consideration with the judge's evaluation that a curative instruction would only emphasize the inappropriate reference, did not request that such an instruction be given. If a request for curative action had been lodged, the judge would undoubtedly have acceded. In the circumstances, therefore, we regard the issue raised in this connection to furnish no adequate grounds for reversing the convictions.
We have quite another sense with regard to the remaining issue and the manner in which it bears upon two of the convictions. When defendant was searched, twenty envelopes of heroin, ten vials of cocaine, and the $965 in cash were discovered. The cash consisted of two $100 bills, twenty-eight $20 bills, eight $10 bills, fifteen $5 bills, and fifty $1 bills. At trial, the State made heavy weather of the quantity and packaging of the drugs, as well as the cash, as the predicates for the "intent to distribute" charges. Detective Martinez's testimony had established the seizure of the drugs and the cash, and the State's expert testified in support of the "intent to distribute" thesis.
Not content with proofs of this quality, the assistant prosecutor introduced additional matter which had a clear capacity for undue prejudice. In cross-examining defendant's only witnessa close friend the prosecutor, toward the end of her examination, asked the following question:
Now, on May 3rd, 1999, from your relationship to knowing Rolando kind of *500 like a neighborhood person, a brother, did he have a job?
Defense counsel objected on relevance grounds and a sidebar conference ensued:
THE COURT: ... [W]hat's the relevancy?
[THE PROSECUTOR]: The relevancy is that he had $965 in cash in his pocket when he was arrested.
[DEFENSE COUNSEL]: But the inference is where did that cash come from ...whether or not he's working.

* * *
[THE PROSECUTOR]: I mean, it's cross examination.
THE COURT: ... I'll allow that on the basis of relevancy. $965 was being offered to show an intent to distribute or being a seller of drugs. Therefore, if she has knowledge of
[DEFENSE COUNSEL]: Judge, ... I would just ask that she's restricted in the form of the question. I don't want the prosecutor testifyingthe fact that he had $965 on him.
[THE PROSECUTOR]: I'm just going to ask this question. I can represent
THE COURT: All right. All right. Fine.
The sidebar conference concluded; the question whether defendant was employed was repeated; it elicited a negative response; and no further questions were proffered to the witness.
In her summation, the prosecutor pressed the point of defendant's lack of a job, suggesting from that fact that the jury could draw an inference that the money found on defendant was the proceeds of drug sales. The prosecutor's argument included the following passage:
* * * Why did Rolando Terrell possess these drugs?
All the evidence shows that he possessed them with the intent to distribute as opposed to personal use. There's a lot of factors that you can consider when you think about that.
I would submit to you that first and primary foremost is money, nine hundred and sixty-five dollars is a lot of money for having in your pockets. It's a lot of money to have in your pockets. You don't even have a job. (emphasis supplied)
He had nine hundred and sixty-five dollars in his pocket....

* * *
The facts, I submit your own common sense plus [the expert's] testimony shows that he was using it to sell it. The money is significant. The money is very, very significant.

* * *
H[e] possessed illegal drugs, he possessed them with intent to distribute them, that's why he had them. That's why he had the money....
Both the question asked by the prosecutor and her use of the answer in making her arguments to the jury were violations of the principle of State v. Mathis, 47 N.J. 455, 221 A.2d 529 (1966). We need say little more than to set out the pertinent excerpt from the Supreme Court's opinion containing its observations on the subject of questions about a defendant's employment or lack thereof where that is a collateral issue in the case.
The prosecutor cross-examined defendant as to how much money he had and when he last worked. The examination suggested strongly that the State might be urging that defendant was in financial need, and hence was likely to commit a robbery.

* * * *501 The court permitted the inquiry on "[the prosecutor's] representation that the question goes to the credibility of the defendant and is not a part of a designed attempt to picture as one critically in need of funds."

* * *
[T]he State's rebuttal testimony had to mean that defendant lied when he said he had worked with his father, ergo, his financial needs must have been met in some other way.
The State says, however, that despite its seeming change of direction, it was still pursuing a matter of "credibility" and nothing more. If we understand the State, it says that it may cross-examine a defendant upon any topic, wholly unrelated to any issue in the case, and then rebut his answer, thus to enable the jury to decide whether the defendant is a believable witness. We know of no rule permitting the pursuit of a collateral or extraneous issue as some sort of a trial run upon credibility. On the contrary, if a collateral inquiry is pursued upon cross-examination, the answer given may not be disputed by extrinsic evidence unless such extrinsic evidence would be independently admissible upon a substantive issue in the case. In other words, if the testimony elicited on cross-examination is not relevant upon the issues in the case, or directly upon the witness's truthworthiness, i.e., his knowledge, interest, bias, or criminal record, his answer must be accepted, lest the trial become the pursuit of sundry extraneous and distracting subjects which, to boot, the parties are probably unprepared to litigate. * * *
Whether defendant did or did not work with his father was of course not an issue in the case. Nor would it directly bear upon credibility, for surely there is nothing about working with one's father, or not working with one's father, which suggests a man cannot be a truthworthy witness. Thus the rebuttal evidence was not germane to the case, either with respect to the triable issues or as to defendant's reliability as a witness. His testimony therefore could not be contradicted. If no more were involved than an infraction of the rules relating to collateral issues, the irregularity might be of no moment. But what emerged was something more than a mere trial of something extraneous. The point the State in truth made by its rebuttal witnesses was that defendant lied when he said he worked for his father, and hence he did not earn money that way, and being otherwise essentially unemployed, he must have been destitute and therefore he likely would rob. Thus, in ultimate effect, the State made the very point which the trial court said was impermissible.

Undoubtedly a lack of money is logically connected with a crime involving financial gain. The trouble is that it would prove too much against too many. As said in 2 Wigmore, Evidence (3d ed. 1940), § 392, p. 341:
"The lack of money by A might be relevant enough to show the probability of A's desiring to commit a crime in order to obtain money. But the practical result of such a doctrine would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has seldom been countenanced as evidence of the graver crimes, particularly of violence."
... [I]n general terms, there must be something more than poverty to tie a defendant into a criminal milieu. Hence we are satisfied the trial court *502 was correct in its approach to this subject. The State, however, transgressed that ruling when by its cross-examination of defendant and its rebuttal testimony it again projected before the jury the forbidden theme that defendant had no apparent means of income and hence was likely to commit a crime for dollar gain. This was improper and injurious.
[Id. at 469-72, 221 A.2d 529 (emphasis supplied).]
The policies underlying the principle articulated in Mathis are too important to be limited to the questioning of a defendant alone. See State v. Copeland, 94 N.J.Super. 196, 203-04, 227 A.2d 523 (App.Div.1967)(Conford, P.J.A.D., dissenting). The introduction of evidence regarding whether or not a defendant has a regular source of income is, when a collateral issue, prohibited in any form. It is of no consequence in terms of applying the principle of Mathis whether the offending reference to defendant's lack of means was based upon defendant's own testimony, as in Mathis itself, State v. Farr, 183 N.J.Super. 463, 444 A.2d 593 (App.Div.1982), and State v. Stewart, 162 N.J.Super. 96, 100, 392 A.2d 234 (App.Div.1978)(opining "on [the court's] own motion" that "it is generally improper to use a defendant's poverty to establish a criminal motive"); whether on the testimony of other witnesses, as in Mathis also, Copeland, supra, 94 N.J.Super. at 202, 227 A.2d 523 (Foley, J.A.D., for the court), and State v. Martini, 131 N.J. 176, 266, 619 A.2d 1208 (1993); or whether it was based on no testimony at all, as in State v. Sherman, 230 N.J.Super. 10, 17, 552 A.2d 621 (App.Div.1988).
Especially in retrospect, considering how the testimony was used in summation, the trial court was incorrect to overrule defendant's objection to the prosecutor's question whether defendant was employed. But, even without the benefit of hindsight, the rule of Mathis should have been applied more faithfully and fully to preclude the question. We do not hold that evidence of the money found on defendant's person should have been kept from the jury, only that it was improper to fortify the inferences which might properly be drawn from that fact with the additional element of defendant's lack of employment.
The prejudice defendant suffered as a result went to the heart of his convictions for possession of the cocaine and heroin with intent to distribute. The State used the tainted testimony in an effort to persuade the jury that the money found on defendant's person must logically have been the proceeds of drug sales since he was unemployed and could not account for the sizeable sum. In addition to violating the Mathis rationale, it seems clear that the argument advanced also improperly shifted to defendant the burden of proving that the cash had a more innocent provenance. For all of these reasons, the convictions for possession with intent to distribute must be reversed.
None of the taint affected the convictions for simple possession, however. The proofs that defendant possessed the drugs were, after the denial of his motion to suppress, substantial. And, there is no logical basis upon which we could conclude that any spillover occurred from the tainted proofs and summation, along with their effects on the jury's consideration of the intent-to-distribute charges, to the convictions for simple possession. Accordingly, there is no basis to reverse those convictions.
The two convictions for possession of heroin and cocaine, respectively, are affirmed. The two convictions for possession of those substances with intent to distribute are reversed. The matter is *503 remanded for resentencing and entry of an amended judgment of conviction.