IN THE MATTER OF L. R., AN ATTORNEY-AT-LAW.

Argued June 11, 1951—Decided June 25, 1951.

For the rule, *Mr. Milton T. Lasher,* by designation of the Ethics and Grievance Committee of Bergen County.

For the respondent attorney, *Mr. Walter H. Jones.*

PER CURIAM. The Ethics and Grievance Committee of Bergen County, following the filing of a complaint against the attorney and the taking of testimony on notice to him and in the presence of him and of his attorney, filed its presentment charging him with various breaches of professional ethics. Among these were that the attorney paid for complimentary press notices, that he engaged with a real estate

corporation which he owned or controlled in such a way that the corporation held itself out to prospective customers as maintaining "a 1-package system which includes servicing a transaction from its inception to its closing" and as having its own legal department which processed and expedited every mortgage applied for through the office, and that he publicized that character of service.

The realty corporation is known by the attorney's family name, and its stock is held by the attorney, his wife and his mother-in-law.

Agents of the real estate corporation were instructed by respondent to announce to customers that the corporation would secure the necessary mortgage, make the search, do everything about the transaction, prepare the deed and turn it over to the customer complete, and that respondent was a lawyer himself so it wasn't necessary for the customer to engage his own lawyer, but if the customer insisted on having his own lawyer then the agents were to tell him that by all means he might have his own lawyer.

On at least one occasion the *Bergen Evening Record* contained a half-column of matter, purporting to be a news article, carrying the information that the attorney was vice-president at that time of the corporation and was celebrating his 31st birthday, that his accomplishments "made him seem a lot older," that he had been instrumental in building one of the largest real estate and insurance offices in the State, that the business covered the northern counties and was doing, according to the attorney's statement, one of the largest volumes of residential and commercial sales in the area, that the staff had grown from one man to fifteen persons, including outside field men, that "the firm has a 1-package system which includes servicing a transaction from its inception to its closing. The corporation has its own legal department which processes and expedites every mortgage applied for through the office." In the midst of the article was printed the attorney's photograph. The attorney was questioned on the witness stand about the newspaper

advertisement, and he replied that he gave the information over the telephone to the newspaper although there were words in the article that were not his words. It is conceded that he did not make any effort at correction. On being asked whether he had paid any money to the representative of the paper who was responsible for the printing, he replied that that was possible, and he made other evasive replies which, having regard for the standard of conduct required of him as an officer of the court, were incompatible with any conclusion other than that he had countenanced, at a price, the printing of laudatory press notices.

The relevant canons of professional ethics are as follows:

"27. Advertising, Direct or Indirect

It is unprofessional to solicit professional employment by circulars, advertisements, through touters or by personal communications or interviews not warranted by personal relations. Indirect advertisements for professional employment such as furnishing or inspiring newspaper comments, or procuring his photograph to be published in connection with causes in which the lawyer has been or is engaged or concerning the manner of their conduct, the magnitude of the interest involved, the importance of the lawyer's position, and all other like selflaudation, offend the traditions and lower the tone of our profession and are reprehensible; *  *,  *.

35. Intermediaries

The professional services of a lawyer should not be controlled or exploited by any lay agency, personal or corporate, which intervenes between client and lawyer. A lawyer's responsibilities and qualifications are individual. He should avoid all relations which direct the performance of his duties by or in the interest of such intermediary. A lawyer's relation to his client should be personal, and the responsibility should be direct to the client. *  *  *

47. Aiding the Unauthorized Practice of Law

No lawyer shall permit his professional services, or his name, to be used in aid of, or to make possible, the unauthorized practice of law by any lay agency, personal or corporate."

We find that the attorney violated all three canons. The practice which has been referred to as "a one-package system" is a system whereby commercial services, including a lawyer's fee, are rendered to a person for a single charge. This throws the practice of law into a commercial atmosphere

which is wholly foreign to the concept of a correct practice and which has been soundly condemned. *Slack v. P. G. Garage, Inc.,* 7 *N. J.* 118, decided May 7, 1951; *In the Matter of A. B. C., an attorney and counselor-at-law,* 7 *N. J.* 388, decided June 4, 1951. The offense here is aggravated beyond that in the case captioned as *"In the Matter of A. B. C."* by the instructions given by the attorney to real estate agents and particularly by the publicizing of the one-package system.

█ We have concluded that a penalty must be administered, although, in view of all of the circumstances, it will be relatively light. The attorney will be suspended for the period of one month. This, however, is not to be taken as a measure of future discipline. The bar henceforward will, of course, be upon full notice that the practices here condemned are regarded as highly unprofessional and may be followed by severe penalty.