**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1016-19T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

AFRIM TAIRI,

      Defendant-Appellant.

_____

> Submitted December 7, 2020 – Decided January 19, 2021
>
> Before Judges Messano and Hoffman.
>
> On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Indictment No. 01-06-1503.
>
> Klingeman Cerimele, attorneys for appellant (Henry E. Klingeman, Ernesto Cerimele, and James Crudele, on the briefs).
>
> Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

This is the fourth time this matter is before us. A jury convicted defendant Afrim Tairi of felony murder and other serious crimes arising from his involvement in three "home invasions" committed during September and November 1995. State v. Tairi, No. A-2684-09 (App. Div. Feb. 16, 2012) (Tairi II) (slip op. at 2, 5). The judge sentenced defendant to an aggregate term of life in prison plus eighty years, with a seventy-year period of parole ineligibility. Id. at 2. We affirmed defendant's conviction on direct appeal, id. at 4, and the Supreme Court denied his petition for certification. 211 N.J. 608 (2012).

Defendant filed a timely petition for post-conviction relief (PCR). State v. Tairi, No. A-1560-13 (Tairi III) (App. Div. Mar. 3, 2016). The PCR judge, who was also the trial judge, denied the petition without an evidentiary hearing. Id. slip op. at 6. We reversed, concluding the judge mistakenly exercised his discretion by refusing to grant PCR counsel's legitimate request for an adjournment despite counsel's self-professed, but blameless, lack of preparation. Id. at 6, 8–9. We remanded the matter to the Law Division to conduct a new PCR hearing before a different judge. Id. at 11.

Following our judgment in Tairi III, defendant filed a new PCR petition alleging, among other things, that newly discovered evidence required reversal

and a new trial.[1]  The alleged newly discovered evidence was two 2012 affidavits from Steven Kadonsky, a prison inmate who claimed to have met, befriended, and provided legal and religious counsel to Edwin Torres and Felix DeJesus, two men who participated in committing the crimes with defendant.[2]  As we noted in Tairi II, "the State relied extensively upon the testimony of . . . Torres, who had been convicted at trial in 1998 . . . and was serving a sentence of life imprisonment plus seventy years, with a sixty-year period of parole ineligibility.[3]  Torres acknowledged testifying against defendant in anticipation of having his sentence reduced . . . ."  Tairi II, slip op. at 5.

---

[1]  The petition is not in the appellate record.  We have relied on the PCR judge's recitation of the procedural history following remand as contained in his written decisions denying PCR and denying defendant's request for a new trial based on newly discovered evidence.

[2]  We affirmed Kadonsky's conviction and life sentence with a twenty-five-year period of parole ineligibility following his guilty plea to "the so-called 'drug kingpin' statute[,]" N.J.S.A. 2C:35-3.  State v. Kadonsky, 288 N.J. Super. 41, 43 (App. Div. 1996).

[3]  As we explained in Tairi II, defendant fled the country shortly after the crimes were committed and was not arrested until 2006 in Switzerland.  Tairi II, slip op. at 17, 22.

The second PCR judge denied defendant's petition without an evidentiary hearing. Defendant moved for reconsideration.[4] In a written statement supporting his partial reconsideration order, the judge granted defendant an evidentiary hearing "limited strictly to the contents of the Kadonsky affidavit[s] . . . No other testimony shall be permitted . . . ."

The gist of each of Kadonsky's affidavits was similar. Kadonsky claimed that both DeJesus and Torres told him they framed defendant for the crimes, which they acknowledged committing with others, including someone known as "Father Nation."[5] In reply, the State produced an affidavit from Torres; he said that he knew and had spoken to Kadonsky while imprisoned, but "any suggestion that [he] told [Kadonsky] . . . [defendant] was not involved . . . [was] false."

The PCR judge heard the testimony of Kadonsky, who claimed to have met DeJesus in prison sometime around 1999 and helped him with legal research on his case. He and DeJesus became close friends, and, soon after they met, DeJesus told Kadonsky about the crimes, describing each in detail over the next

---

[4] Contrary to the assertion in defendant's brief, nothing in the record indicates the prosecutor joined in the motion for reconsideration.

[5] DeJesus was also convicted and died in prison before defendant's trial. Father Nation was found murdered in North Carolina in 1996. State v. Tairi, No. A-3762-07 (App. Div. June 17, 2008) (Tairi I) (slip op. at 3, 8 n.1).

A-1016-19T4

several years. In 2005, dying of cancer, DeJesus exacted a promise from Kadonsky to come forward with the information that defendant was not involved "if [defendant] ever got convicted."[6]

According to Kadonsky, in 2000, DeJesus introduced him to Torres, for whom Kadonsky helped prepare a habeas corpus petition. Torres described the three incidents in detail and told Kadonsky that he and DeJesus decided to blame defendant and portray him as the mastermind of each criminal episode because they knew defendant had left the United States. Torres said he and DeJesus simply substituted defendant for the actual third person involved in each incident, i.e., DeJesus' father in the first two, and Father Nation in the third, which resulted in the felony murder charge. Torres implied Father Nation was killed because he and DeJesus thought he would "roll" on them.

In 2009, Torres asked Kadonsky to recommend an attorney because the State intended to call him as a witness at defendant's trial. According to Kadonsky, that was when he first realized defendant had been arrested. Kadonsky obliged, recommended an attorney he knew would never permit

---

[6] In his affidavit, Kadonsky claimed DeJesus asked him to come forward if defendant "g[ot] arrested" for the crimes.

A-1016-19T4

Torres to lie if called to testify, and felt he was now "off the hook" because if Torres testified truthfully, defendant would not be convicted.[7]

During cross-examination, Kadonsky acknowledged that he knew defendant had been falsely implicated for at least ten years before executing the affidavits in 2012. Further, Kadonsky testified that he told defendant about it shortly after his conviction in 2010, but defendant seemed uninterested. Only later, in 2010–11, when Kadonsky and defendant became cellmates in prison, did the relationship warm, and Kadonsky provided legal advice to defendant. After defendant's convictions were affirmed, Kadonsky prepared the two affidavits and sent them to defendant's attorney. The prosecutor questioned Kadonsky at length about his prior conviction and involvement in other unsuccessful legal proceedings.

In a written opinion supporting his order denying a new trial, the PCR judge determined, "[b]ased on his demeanor and testimony[,]" that Kadonsky was not "a credible witness," and he added nothing new to what was in the affidavits. The judge noted certain mistakes Kadonsky made in recollecting the specifics of his conversations with DeJesus and Torres when compared to the

---

[7]  The affidavit filed by Torres in response to Kadonsky's claims, and which rebuts the statements Kadonsky says Torres made to him, was apparently prepared by this very same attorney.

trial evidence. While Kadonsky seemed to recall details of the three crimes with specificity, he was unable to recall "details of his own cases and other legal work." The judge "found it significant" that the prosecutor cited "four separate cases" where Kadonsky provided affidavits, which courts found to be "unreliable." Additionally, the judge found Kadonsky was not a credible witness "based on the length of time that [he] waited to bring these[] claims forward[.]"

After considering the three-prong test enunciated by the Court in State v. Carter, 85 N.J. 300, 314 (1981), the judge concluded defendant had failed to establish grounds for a new trial based on newly discovered evidence. He entered the order under review.

Before us, defendant argues the newly discovered evidence satisfied the Carter standard, which the judge misapplied, and he is entitled to a new trial. In addition, he contends the "pro forma evidentiary hearing" was inadequate.[8] We disagree and affirm.

Importantly, "[o]ur standard of review is necessarily deferential to a PCR court's factual findings . . . that are supported by suffecient credible evidence in the record." State v. Nash, 212 N.J. 518, 540 (2013) (citing State v. Harris, 181

---

[8] Defendant does not appeal from the PCR judge's prior order that denied relief on the other issues raised in defendant's petitions.

N.J. 391, 415 (2004)).  We review de novo, however, the trial court's application of those facts to the legal principles involved.  Harris, 181 N.J. at 416.

A party is entitled to a new trial based on newly discovered evidence if the evidence is "(1) material to the issue and not merely cumulative or impeaching or contradictory; (2) discovered since the trial and not discoverable by reasonable diligence beforehand; and (3) of the sort that would probably change the jury's verdict if a new trial were granted."  Carter, 85 N.J. at 314 (citing State v. Artis, 36 N.J. 538, 541 (1962)).  A defendant must satisfy all three prongs of the test to be granted a new trial.  Ibid. (citing State v. Johnson, 34 N.J. 212, 223 (1961)).

However, "[n]ewly discovered evidence must be reviewed with a certain degree of circumspection to ensure that it is not the product of fabrication, and, if credible and material, is of sufficient weight that it would probably alter the outcome of the verdict in a new trial."  State v. Ways, 180 N.J. 171, 187–88 (2004) (citing State v. Buonadonna, 122 N.J. 22, 51 (1991)).  Prongs one and three are "inextricably intertwined."  Nash, 212 N.J. at 549.  "'[E]vidence [that] would shake the very foundation of the State's case and almost certainly alter the earlier jury verdict' could not be categorized as 'merely cumulative.'"  Ibid. (quoting Ways, 180 N.J. at 189 (second alteration in original)).  "The power of

8

the newly discovered evidence to alter the verdict is the central issue, not the label to be placed on that evidence." Id. at 549–50 (quoting Ways, 180 N.J. at 191–92).

Defendant claims to have met all three prongs of the Carter standard. Contrary to defendant's assertion, however, the judge was not obligated to grant a new trial simply because Kadonsky's version of the facts was material and, if believed, sufficient to alter the jury's verdict, i.e., satisfying prongs one and three of the Carter standard. The judge was entitled to make adverse credibility findings regarding the truthfulness of Kadonsky's testimony, and we, in turn, defer to the judge's ability to observe the witness and assess his truthfulness. Ways, 180 N.J. at 197. And, the inevitable conclusion drawn from Kadonsky's lack of credibility was DeJesus and Torres never told Kadonsky that they framed defendant as their co-defendant in the series of crimes they committed.

Defendant argues the judge's credibility determination was flawed because he contrasted Kadonsky's testimony with the jury's obvious belief in Torres' trial testimony. He further contends that the judge mistakenly relied on statements Kadonsky made in other court filings that were discredited. However, as noted, the judge explained his reasons for deciding Kadonsky was not a credible witness, including his decade-old delay in not coming forward

with the allegedly exculpatory information. While we might otherwise agree that reliance on statements Kadonsky made in filings in unrelated matters was misplaced, there was ample support for the judge's credibility determination, particularly since the judge had "the ability to evaluate the witness[] firsthand." Ways, 180 N.J. at 196 (citing State v. Carter, 69 N.J. 420, 427 (1976)).

Defendant also contends that the evidentiary hearing was no more than a "pro forma" attempt to comply with the Court's dictates regarding evidentiary hearings on motions for a new trial. Notably, defendant argues it was error to deny him the opportunity to cross-examine Torres, particularly since the judge noted that Torres' affidavit directly contradicted Kadonsky's testimony.

During the first hearing on the PCR petition, defense counsel urged the judge to conduct an evidentiary hearing at which Kadonsky would testify. The prosecutor opposed the request, arguing the judge had everything necessary to dispose of both defendant's ineffective assistance of counsel claims and his request for a new trial. Alternatively, the prosecutor argued that if the judge were to grant an evidentiary hearing, it should be strictly limited to the contents of Kadonsky's affidavits and Torres' affidavit, and that both would testify.

As noted, the judge originally denied defendant's application in toto. We have not been provided with defendant's reconsideration motion, however, in

his written statement of reasons supporting the order for partial reconsideration, the judge noted defendant's motion was based on Kadonsky's affidavits. The judge further noted that although the State took no position on the motion, it argued that "Kadonsky will not convince the [c]ourt to usurp the jury's verdict . . . even if he testifies in person." As we said, the judge limited the hearing "strictly to the contents of the Kadonsky affidavit[.]"

The record fails to reflect defendant ever objected to Kadonsky being the sole witness. Indeed, when the hearing reconvened for receipt of Kadonsky's testimony, defense counsel did not request to have Torres produced as a witness, but, instead, he marked certain exhibits and proceeded to conduct direct examination. When Kadonsky finished his testimony, counsel moved the exhibits into evidence and discussed the timing of further written submissions to the court. In short, there was no discussion of Torres' appearance, or lack thereof.

In his brief, defendant claims, without any citation to the record, that the judge "refused to permit examination of . . . Torres." There is no citation because the record fails to reveal that defendant either requested Torres be produced or objected to conducting the hearing with only Kadonsky as a witness.

A-1016-19T4

To the extent we have not otherwise addressed defendant's contentions, they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1016-19T4